**UNIT DROP FORGE DIVISION EATON, YALE & TOWNE, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 16942.

United States Court of Appeals
Seventh Circuit.

June 13, 1969.

Frank C. Heath, Stuart O. H. Merz, Cleveland, Ohio, for petitioner, Jones, Day, Cockley & Reavis, Cleveland, Ohio, of counsel.

Stanley Lubin, Stephen I. Schlossberg, Detroit, Mich., for intervenor.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Herbert Fishgold, Atty., N. L. R. B., for respondent.

Before DUFFY, Senior Circuit Judge, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

NLRB found that petitioner company, by unilaterally instituting a change with respect to loading work in its shipping room, and refusing to bargain over the change, engaged in an unfair labor practice under section 8(a) (5) and (1) of the act.

The details are set forth in the decision of the board [1] and the decision of the trial examiner. The facts are not in dispute. We shall avoid unnecessary repetition.

We are concerned with an operation taking place in the shipping room, the last operation with respect to the forgings produced by the company before they left the plant. On the first shift this operation was the full time responsibility of Joseph Szalacinski. Other employees performed it part time on the first and other shifts.

Before April 10, 1967 this operation included the counting, and loading on trucks or cars, and the movement incident thereto, of individual forgings, using a fork lift as needed; the worker performing it was called a shipper loader; and he was paid under an incentive schedule, called an incentive plan, and listed in the collective bargaining agreement.

The change was put into effect April 10, after notice to the union and rejection of the union demand for bargaining. The company installed a scale so that boxes of forgings could be weighed, eliminated the requirement that forgings be counted, and thus permitted the movement, weighing, and loading of forgings in bulk, by fork lift. The change ultimately became almost complete, although a few forgings must still be individually moved about. The worker performing the modified operation was classified as an industrial truck driver and was paid an hourly rate except that on the rare occasions when movement of individual forgings was required his pay was determined under the shipper loader incentive plan. The result for Szalacinski was a very substantial decline in average hourly and total weekly pay. Those who performed the operation part time suffered a similar but smaller loss.

It seems to be conceded that this is a type and degree of change about which there is a statutory duty to bargain collectively unless such duty be waived by contract. The company claims there has been a waiver.

Reliance is placed on paragraph 116 of the master (company wide) agreement, providing as follows:

"The Company and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered in this Agreement *even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.*" (Italics ours.)

Apparently the board, on the theory, we presume, that it is effectuating statutory policy, refuses to give full literal

effect to the language above quoted and italicized when it appears in waiver provisions, but requires, before recognizing a waiver, that it "appear from an evaluation of * * * negotiations that the particular matter [in issue] was fully discussed or consciously explored and the union consciously yielded or clearly and unmistakably waived its interest in the matter." [2]

Contract language almost identical to that which is italicized above was before the Supreme Court in NLRB v. C & C Plywood Corp.[3] There the Supreme Court held that the board did not exceed its powers in interpreting the agreement "only so far as was necessary to determine that the union did not agree to give up these statutory safeguards."

We note, of course, that the Supreme Court considered it important that the collective bargaining agreement in *C & C Plywood* contained no arbitration clause for resolution of the dispute at the end of the grievance procedure. The agreement before us (the master agreement, when read together with the supplementary agreement applying to the particular plant) did provide for arbitration at the instance of either party if the grievance has not been settled at Step 5 of the grievance procedure.

It is not necessary, however, in order to decide this case, either to support or reject the board's position, above quoted, with respect to the italicized language. A provision of the supplementary agreement itself shows that the duty to bargain collectively was not waived with respect to the matter in hand.

Article III of the supplementary agreement is entitled "Incentive Schedules and Time-Study Procedure". Sec. 6 thereof provides : "In this Article are the recognized incentive plans in effect, and before any changes in these incentive plans are made or new plans established, they will be agreed upon by the parties."

This was the provision which the union relied on in seeking to bargain over the change in question.

■ The board considered the virtual discontinuance of the incentive plan for the operation involved to be a change in incentive plan under III, 6. We agree. It follows that the supplementary agreement contemplated bargaining about such changes and that waiver of the statutory duty to bargain about it is not to be found in the general wording of paragraph 116 of the master agreement.

The company also relies upon some language, hereafter italicized, in paragraph 35 of the master agreement: "There shall be no appeal from the arbitrator's decision which shall be final and binding on the Union and its members, the employe or employes involved and the Company. The Union will discourage any attempt of its members and will not encourage or cooperate with any of its members in any appeal to any court or labor board from a decision by the arbitrator, *nor will the Union or its members attempt to bring about a settlement of any claim or issue upon which the arbitrator is empowered to rule by any other means.*"

The parties do not agree, nor does the contract make explicit, what powers the arbitrator might have in the premises of this dispute. Assuming he would have power to make an award where the company instituted a change in an incentive plan which had not been agreed upon pursuant to sec 6, we think that because sec. 6 requires agreement between the parties, waiver of the duty to bargain about such change is neither expressed nor is it implied with sufficient clarity in the italicized language of paragraph 35.

Under the circumstances, and in the light of the board's interpretation of III, 6, we do not deem it an abuse of the

2. Quoted by the board majority from Rockwell-Standard Corporation, Transmission and Axle Division, Forge Division, 166 NLRB No. 23. See NLRB v. Rockwell-Standard Corp., etc., et al (6th Cir., May 29, 1969). 410 F.2d 953, p. 957, footnote 2.

3. (1967), 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486.

board's discretion to entertain these proceedings, rather than require the union initially to follow the grievance and arbitration route.

The board's order compels the company to post a specified notice. The first full paragraph reads as follows:

"AFTER A TRIAL IN WHICH BOTH SIDES HAD THE OPPORTUNITY TO PRESENT THEIR EVIDENCE, THE NATIONAL LABOR RELATIONS BOARD HAS FOUND THAT WE VIOLATED THE ACT AND HAS ORDERED US TO POST THIS NOTICE AND TO KEEP OUR WORD ABOUT WHAT WE SAY IN THIS NOTICE."

There is an implication that the company is untrustworthy in the phrasing "and has ordered us * * * to keep our word about what we say in this notice." To compel the company to make an announcement suggesting that it is reliable only under duress is offensive, and the record contains no justification for doing so. These parties have a long history of successful bargaining and contractual relations. The company held a view of its statutory duties as affected by its agreement which has been found erroneous, but there was no suggestion of dishonesty in holding the view under which it acted.

Accordingly the first full paragraph of the notice is to be amended by striking out the last twelve words and inserting in lieu thereof "AND CARRY OUT ITS PROVISIONS."

The second full paragraph reads as follows:

"WE WILL NOT make changes in our operations or in the method of payment for work without first discussing and negotiating such changes with the Union."

All that has been determined is that the company commits an unfair labor practice if it makes a change in or establishes new incentive plans without prior discussion and negotiation with the union. The quoted paragraph is too broad because it goes beyond the present situation and may be read as requiring collective bargaining over matters as to which no such duty exists or as to which such duty has been effectively waived.

Other paragraphs of the notice adequately describe the unfair labor practice committed and the remedy prescribed. Therefore the second full paragraph of the notice is to be stricken.

The board's order is to be modified by amending the first full paragraph of the notice as stated above and by striking out the second full paragraph. As so modified the order will be enforced by appropriate judgment.

DUFFY, Senior Circuit Judge (dissenting).

I respectfully dissent. In this case, the trial examiner found that the Company had not engaged in unfair practices as alleged in the complaint, and recommended that the complaint be dismissed.

The Board, in a three to two decision, rejected the findings of the trial examiner and ordered the Company to bargain with the Union not only concerning reclassification, but also concerning any "changes in our operations or in the method of payment for work." Thus, we have the examiner and two members of the Board on one side and three Board members on the other.

The trial examiner found an express waiver of the Union's right to bargain on the disputed issues. He also found that the dispute in question did not involve a "change in incentive plans." It seems clear that a reclassification of an employee does not involve a change in an incentive plan.

Paragraph 35 of the contract provides, in part: " * * * Nor will the Union or its members attempt to bring about a settlement of any claim or issue upon which the arbitrator is empowered to rule by any other means."

In my view, the Board had no right to ignore the express waiver of the Union. The effect of the Board's order is to nullify an express provision of the contract.

I think that the trial examiner and the two dissenting Board members were correct.

I further object to the Board's order which requires the Company to notify its employees that the Company will "keep our word about what we say in this notice." The inference is that the Company failed to keep its word as to the issues in this case. Such a provision is unwarranted and unfair.