**LOVE BOX CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 6–68.

United States Court of Appeals Tenth Circuit.

June 30, 1969.

Marvin J. Martin, Wichita, Kan. (W. Stanley Churchill, and Martin, Cooper, Wooley, Churchill & Friedel, Wichita, Kan., with him on the brief), for petitioner.

Michael F. Rosenblum, Atty., NLRB (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, and Marcel Mallet-Prevost, Asst. Gen. Counsel, and Nancy M. Sherman, Washington, D. C., with him on the brief), for respondent.

Before BREITENSTEIN, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

Love Box Co., Inc. petitions this court to review and set aside an order of the

respondent National Labor Relations Board which found petitioner in violation of sections 8(a) (1), (3), and (4) of the National Labor Relations Act in that it interrogated its employees concerning their union activities and threatened them with economic reprisal, and in that it discharged employees Kenneth Mullins and Kenneth Larsh on account of their union activities.

The respondent cross-petitions this court for enforcement of its order that the petitioner cease and desist from discouraging union membership, that it reinstate the two discharged employees, and for other "affirmative relief."

The Board and the Examiner did not agree on the disposition of the charges. There was also a dissent to the Board's order.

■ It is, of course, incumbent upon this court in cases of this nature to determine whether substantial evidence in the record as a whole supports the findings of the Board. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950). Moreover the Supreme Court there pointed out that this test is in no way modified when the Board and its Trial Examiner disagree although the supporting evidence may be considered less substantial in such cases. The Court also admonished Courts of Appeal that:

"* * * The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both."

We recently pointed out in NLRB v. Sequoyah Mills, Inc., 409 F.2d 606 (Tenth Circuit, April 15, 1969), that findings of fact and drawing of inferences are for the Board.

■ In considering the first contested issue of whether petitioner violated section 8(a) (1) by interrogating its employees concerning their union activities and by threatening them with economic reprisal, we have reviewed the record as a whole and concude that there is substantial evidence to support the Board's finding. See NLRB v. Thompson Transport Co., 406 F.2d 698 (10th Cir.1969), and Cain's Coffee Co. v. NLRB, 404 F.2d 1172 (10th Cir.1968).

■ In regard to the order of the Board that employees Mullins and Larsh be reinstated, we find it advisable to again point out that employees may be dismissed for any reason, or no reason, as long as union activity is not the basis for their discharge. Cain's Coffee Co. v. NLRB.

In reviewing the discharge of employee Kenneth Mullins, the Trial Examiner found that he was discharged for cause, and the Board disagreed with his finding. Careful examination of the record indicates that Mullins was well known for the poor quality of his work. A few years prior to his discharge, he had been suspended because he consistently "ran bad orders," and he was the only man to have ever been so suspended by the plant. On the night of January 20, 1966, when Mullins reported for work, he was assigned to a machine different from the one he normally ran because several employees were absent. Mullins had operated the machine before, and the helper of the usual operator was there to assist him. That night nine defective orders out of thirty-two were produced which resulted in a total loss of approximately $650.00 to $700.00 in materials alone. Never had such a quantity of defective work been put out by any employee of the petitioner during the course of one shift. No complaint was made that the machine was defective or that it was in bad repair. Moreover, it is conceded that the sole responsibility for the work put out is the operator's—in this case, Mullins. The record clearly demonstrates that the unusually poor quality of Mullins' output was the reason for his discharge.

The Board, in overturning the Trial Examiner's conclusion, stated that it was most significant that the petitioner's general superintendent had reassured Mullins in December 1965 that despite an earlier disciplinary layoff as a result of poor quality work, "* * * as long as you do your work like you have been doing it, * * * I don't see that we will have any trouble." It is difficult for us to see how this statement in any way supports the Board's conclusion that Mullins was discharged for union activity. It would rather seem that it would lend support to the fact that Mullins, by achieving an all-time high of poor quality workmanship on the night of January 20, failed to do his job as he had been doing it and thereby created the situation which led to his discharge. We find that the evidence is not substantial to support the Board's finding and therefore its order will not be enforced as to Mullins.

As to employee Kenneth Larsh, it is the petitioner's position that he was discharged because he chose to drink rather than to show up for work. Of the six days immediately prior to his discharge, Larsh was absent three of them. On the Friday, April 29, immediately preceding his discharge, Larsh reported that he would not be at work, but later during the dinner break was observed with his roommate, Aubrey Alley, by Alley's foreman Perry sitting in a booth at Marie's Restaurant frequently patronized by employees of the plant. Perry reported the incident to Larsh's foreman Souter. The foreman took no action at that time and let the matter pass because he "figured a man had to eat if he was sick." That same night after midnight, Larsh got up and joined his roommate and another second shift employee of the petitioner company and two girls at his home. Even though the others admitted to drinking, Larsh stated that he did not participate. He reported to work on Monday and Tuesday, May 2 and 3. Following the completion of the shift on Tuesday, May 3, the Trial Examiner found that "Larsh socialized with several friends at a night club before retiring." The following day, he went to Marie's Restaurant around noon and drank some coffee. He then proceeded to the Bonanza Club and by his own admission drank four or five beers there. He then returned to Marie's about 3:00 p.m. and called in to report that he would not be at work. A waitress at the restaurant and Larsh's friend took Larsh home about 5:00 p.m., but then Larsh requested to return to the restaurant where he had left his truck because he was concerned for the tools in it. He then drove his truck home and went to sleep. At about 7:30 p.m., he awoke and drove back to Marie's, where he stretched out on the seat of his truck. A fellow employee, Art Koob, found him there and asked Larsh to go in and have some coffee. That same evening about 9:00 p.m., foreman Perry again appeared at the restaurant to buy some sandwiches during the dinner break, and observed Larsh and Koob in a booth. Koob left Larsh and went over and sat with Perry (Koob had left work earlier, complaining of his ulcers). Perry said that Koob joined him in order to explain his absence from work and presence at Marie's and further stated that Larsh was drunk and he was trying to sober him up before taking him home. On his return to the plant Perry informed foreman Souter that Larsh was drunk; Souter at that point decided to discharge Larsh when he reported for work the next day. The next day Souter informed Larsh he had a press that had needed running the previous evening and that he could not run it because Larsh was absent and that Larsh was seen in a drunken condition when he should have been running the press. Souter handed him the papers, but Larsh grew angry and said that Souter of all people should not be discharging him. Larsh contends that his absenteeism was due to his having the flu and feeling nauseous and not to any drinking problem. The waitress who testified in his behalf stated in her affidavit that Larsh did not drink, and on the stand

again stated that he never drank. However, by his own admission Larsh testified that he drank four or five beers immediately prior to the time he was supposed to report for work. This fact, coupled with Larsh's statement when he learned of his discharge, indicates that he knew the reason why he was being fired.

The General Counsel in his brief argues that not too much reliance should be placed on the petitioner's contention that Larsh was discharged for drinking, due to the fact that the petitioner shifted its positions as to why it discharged Larsh. We have carefully examined the record and find that the petitioner in its opening statement before the Trial Examiner stated that the sole issue to be determined in regard to Larsh was whether he was absent from work because he was legitimately ill or because he had been drinking. The petitioner never abandoned its position that it terminated Larsh's employment for such reason. It is also significant that the General Counsel in his opening statement said that the petitioner had the burden of showing drunkenness and of differentiating between "legitimate" illness and one caused by such improper activities. The Board attempted to wash out this distinction by stating "* * * one could be just as 'ill' and unable to work due to drinking as for any other illness * * *."

In light of the above, and in accordance with our obligation to confine the Board "within reasonable grounds," we must conclude that there was not substantial evidence to support the Board's finding that Larsh was illegally discharged in violation of sections 8(a) (1), (3), and (4). Cain's Coffee Co. v. NLRB, 404 F.2d 1172 (10th Cir.1968); Pacific Intermountain Express Co. v. NLRB, 412 F.2d 1, (Tenth Circuit, June 13, 1969).

In view of the changes made by the Board in the Examiner's proposed order, and in view of our decision to only partially enforce the Board's order, we will not pass on the form of Notice that was attached to the Board's Order and which may be suggested by the Board to be included in the Judgment until the form of Judgment is actually submitted. After such submission the petitioner may file objections to it, and the arguments in its briefs as to the Notice portion may be incorporated therein if pertinent.

The order of the Board will be enforced in part as set out above. The Board will submit a proposed form of Judgment.