**LOVE BOX CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 6–68.**

United States Court of Appeals, Tenth Circuit.

March 5, 1970.

Marvin J. Martin, Wichita, Kan. (W. Stanley Churchill, and Martin, Cooper, Churchill & Friedel, Wichita, Kan., on the petition), for petitioner.

John I. Taylor, Jr., Attorney, N.L.R.B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Michael F. Rosenblum, Attorney, N.L.R.B., on the Brief), for respondent.

Before MURRAH, Chief Judge, and LEWIS, BREITENSTEIN, HILL, SETH, HICKEY, and HOLLOWAY, Circuit Judges, sitting en banc.

PER CURIAM.

*Opinion On Rehearing*

This rehearing en banc was granted for consideration of the portion of the National Labor Relations Board Order in this case relating to the notice required to be posted by the company. The panel which heard the petition for review, and the cross-petition to enforce the order, filed an opinion on the "merits" which held that the Board's findings were supported in part, and thus a partial enforcement was in order. 412 F.2d 946. The opinion expressly did not consider the form of the judgment, as this matter was deferred. The parties thereafter submitted proposed forms of judgment, and the panel entered a judgment which modified the Board's suggested wording of the notice to be posted. The petitioner company still objected to the notice, and asked for a rehearing en banc which was granted.

■■ The general standard for court review is directed to the court's consideration of the underlying findings relating to a violation. It does not refer to the Board's inclusion of a remedy under section 10(c) whereunder the Board may order such "affirmative action" as will effectuate the policies of the Act. Thus the issue here arises because there is no statutory provision as to the review of such a remedy. It is apparent that the Board's exercise of its authority under this subsection (c) is not without review. The Supreme Court upon many occasions has reviewed the scope and the substance of orders so issued.

Although orders under section 10(c) have often been reviewed by other courts, reference is seldom made to the nature or the standards of review of the section 10(c) affirmative relief portion of the Board's order as compared to the basic violation findings. See 112 U.Pa.L.Rev. 69 where this distinction is developed.

The Supreme Court has considered orders on a case by case basis. In N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953),

the Court examined the Board's order providing a formula for determining the amount of back pay to be awarded a discharged employee. The Court of section 10(c) said: "It charges the Board with the task of devising remedies to effectuate the policies of the Act. Of course the remedies must be functions of the purposes to be accomplished, * * *." The Court also said, as to the back pay at least, that the power was broad, was discretionary, and for the Board, not the courts. The Court also quoted stronger language from Virginia Electric & Power Co. v. N.L.R.B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568, to the effect that a back pay order of the Board should "stand" unless it be a " * * * patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act."

In N. L. R. B. v. General Drivers, 264 F.2d 21 (10th Cir.), we examined an order requiring a refund of union dues to its members and held that the remedy was appropriate, the order remedial. It was also stated that " * * * we are unable to say that the remedy the Board has fashioned is wholly inappropriate for the effectuation of the policies of the Act." The cases of N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377, and Virginia Electric & Power Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568, were then cited.

The Supreme Court again in Local 60, United Brotherhood of Carpenters and Joiners of America, A.F.L.-C.I.O. v. N. L. R. B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed. 2d 1 (1961), considered the portion of the Board's order relating to a refund of union fees to members and found it to be punitive rather than remedial and beyond the powers of the Board. This was the only expressed standard. See also N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; International Ass'n of Machinists, Tool and Die Makers Lodge No. 35 v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; N. L.

R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368, and Virginia Electric & Power Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568.

Recently, however, the Supreme Court in N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, was concerned with the significance of union authorization cards and, more pertinent to our question, whether the Board's order to bargain was as it said an "appropriate and authorized remedy." The Court in a footnote concerning the purpose of the Board's bargaining order stated in part: "In fashioning its remedies under the broad provisions of § 10 (c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts. See Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 85 S.Ct. 398, 13 L. Ed.2d 233 (1964)." The Court in its extended evaluation of the bargaining order as a remedy in the body of the opinion did not set out as such any standards of review of the selection of the remedy other than the footnote considered above; and reference to the "propriety" of the remedy, when it is the "only available, effective remedy," and whether the situation is extraordinary to warrant a bargaining order. In so doing the Court refers to "findings" made in one of the combined cases by the Board to the effect that the situation was such that a bargaining order would have been necessary to repair the damage. The Court in the other two cases where the Board did not make a finding that such an order was necessary stated that such a finding was implicit in the order; however, the Court remanded these two cases for "proper findings."

█ It would appear from the Gissel case that the Court is prepared to apply essentially the same standards to section 10(c) affirmative relief orders as it has to other findings of the Board with only the footnote reference to the expertise of the Board on the subject and the "special respect" to be given to it by the review-

ing courts. Thus under N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S. Ct. 1918, 23 L.Ed.2d 547, we make the usual review of the findings made by the Board as they relate to the use of the notice, to examine the notice as a remedy to see if it is an "appropriate remedy," and in the choice of remedy give "special respect" to the Board's expertise; also to see if it contains inferences not warranted by the findings or which are obviously offensive or demeaning.

■ The notice as a remedy was contemplated in the legislative history, and in cases such as the one before us it is obviously proper, and no additional or special findings are necessary to support it.

We next turn to a somewhat different question—the contents of the notice. The notice itself is to become a part of the judgment of this court and it must be carefully examined.

The Seventh Circuit in Unit Drop Forge Div. Eaton, Yale & Towne, Inc. v. N. L. R. B., 412 F.2d 108 (1969), recently reviewed the contents of a notice provision in the Board's order and struck out the portion which stated that the Board has ordered the company to "keep our word about what we say in this notice." The court said that it otherwise contained an implication that the company was untrustworthy. The wording, the court said, suggested that the respondent was reliable only under duress, and this was "offensive." The court in N. L. R. B. v. Spartans Industries, 406 F.2d 1002 (5th Cir.), said such a promise to keep a promise is permissible but indicated no standard. See also on breadth of notice, N. L. R. B. v. Laney & Duke Storage Warehouse Co., 369 F.2d 859 (5th Cir.). These several recent cases do thus indicate that the courts examine in some detail the notice provisions of the Board's orders and do not hesitate to vary the wording if it is objectionable on general grounds of fairness and reasonableness.

The cases in the United States Courts of Appeal concerning orders of the Board which required that the notice portion of the order be read to the assembled employees are also of significance here. These include J. P. Stevens & Co. v. N. L. R. B., 380 F.2d 292 (2d Cir.); International Union of Electrical, Radio & Mach. Wkrs. v. N. L. R. B., 127 U.S.App.D.C. 303, 383 F.2d 230, and Textile Workers Union v. N. L. R. B., 388 F.2d 896 (2d Cir.). See also Art Metals Const. Co. v. N. L. R. B., 110 F.2d 148 (2d Cir.), and N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

To generalize as to these cited cases it may be said that the courts have evaluated the notice portion of the orders and in many instances have changed its wording or the manner in which the "notice" is to be given. The opinions use a variety of terms to describe the reasons for changes.

■■ Thus we examine the wording of the notice contained in the order of the Board sought to be incorporated in our judgment of enforcement. The notice there suggested included the phrase that the company was to "keep its word" as to the matters set out in the notice. The preliminary paragraph read:

" * * * [W]e hereby notify our employees that:
"AFTER A TRIAL IN WHICH BOTH SIDES HAD THE OPPORTUNITY TO PRESENT THEIR EVIDENCE, THE NATIONAL LABOR RELATIONS BOARD HAS FOUND THAT WE VIOLATED THE LAW AND HAS ORDERED US TO POST THIS NOTICE AND TO KEEP OUR WORD ABOUT WHAT WE SAY IN THIS NOTICE."

The last phrase was considered objectionable by the panel because it contained the unwarranted inference that the respondent would not keep its word unless so ordered. The phrase was stricken from the notice in the judgment, and the court on this rehearing does likewise. Unit Drop Forge Div. Eaton, Yale & Towne, Inc. v. N. L. R. B., 412 F.2d 108 (7th Cir.). Instead the following is

substituted after the word "notice" as more closely following the decisions: " * * * and we intend to carry out the order of the Board, the Judgment of the Court, and abide by the following: * * *." This is followed by the several "we will not" paragraphs. It is suggested that this first "we will not" paragraph of the Board's proposed notice [1] which reads, "we will not question you in any way over the union," is too broad in that it includes questioning not in violation of the Act. We agree and it is modified to read: "We will not question you over the union in a way to interfere with your union activities."

■ The Board's notice also contains a paragraph reading: "We will not spy on your union activities or create the impression we are spying on your union activities." The words "spy" and "spying" are not reasonable synonyms for "surveillance" as intended and have unjustified connotations. In this day and age the word "surveillance" is in general usage and is sufficiently well understood for these purposes, and should be used in the notice.

■ The petitioner objects to the requirement that a representative of the company, presumably the president, sign the notice. Petitioner urges that no individual can, or should be required to, make the undertaking contained in the original notice for the indeterminate future, and for all of petitioner's individual officers, agents, and management personnel.

The "we" in the notice is, however, understandable in view of the proper direction of the order against the corporation and also its officers and agents. The "we will not" portions in the notice as here modified if signed by someone in an individual capacity could constitute promises on behalf of other persons, but this is not the case here. It is contemplated that the notice be signed in a representative capacity as a statement of intention on behalf of the corporation, and it covers corporate acts and acts of its officers and agents on behalf of the corporation. This is the only way a corporation can indicate that it intends to carry out the order. The notice may be signed by any officer of the corporation or other person who has express authority to bind the corporation to contracts. There is no requirement that it be signed by the chief executive officer.

Judgment will be entered accordingly.

---

1. The body of the Board's notice reads:

"We will not question you in any way over the union.

"We will not threaten to fire you or to close the plant or to take away benefits if you support the union.

"We will not threaten you in any way over the union.

"We will not promise you promotions or wage increases if you cease to support the union.

"We will not promise you benefits to cease your support of the union.

"We will not spy on your union activities or create the impression we are spying on your union activities.

"We will respect the rights of our employees to self-organization, to form, join or assist any labor union, or to bargain collectively in respect to terms or conditions of employment through such union, or any representative of their choice, or to refrain from such activity, and we will not interfere with, restrain or coerce our employees in the exercise of these rights.

"You and all our employees are free to become members of any labor union or to refrain from doing so."