**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**REED ROLLED THREAD DIE CO., Subsidiary of UTD Corp., Respondent.**

**No. 7589.**

United States Court of Appeals, First Circuit.

Oct. 5, 1970.

Warren M. Davison, Deputy Asst. Gen. Counsel, with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, were on brief, for petitioner.

Arthur L. Stevenson, Jr., with whom L. Scott Harshbarger, Boston, Mass., was on brief, for respondent; Goodwin, Procter & Hoar, Boston, Mass., of counsel.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

Respondent undertakes the very considerable burden of demonstrating the lack of substantial evidence on the rec-

ord as a whole to support the Board's conclusion, 179 N.L.R.B. No. 6 (1969), that it has dominated, interfered with, and unlawfully assisted its Plant Committee and that Committee's employee component, the Factory Workers Group.

■ For some twenty years respondent's labor-management functions have largely been exercised within the framework of a Plant Committee, the management members being the President and Personnel Manager and the seven employee representatives being the "Factory Workers Group", elected annually by employees of more than ninety days service with the company. The record supports the following abbreviated description of the workings of the Committee. The Group has seen little turnover in its composition, has no access to funds of its own, does not caucus or hold meetings other than shortly before or during its meetings with management, has no agenda in advance of such meetings, does not participate in the control of subjects discussed, and does not report to the body of employees either before or during important deliberations. The employees do not have a collective bargaining agreement and do not meet or vote as a body. Action taken by the Committee is reported to all employees, including the Factory Workers Group, in the form of reproduced copies of minutes of its meetings. Respondent's President, who alone has the power to call special meetings on company time, conducts most of each meeting, selects the order of discussion, and alone reviews the minutes, which are prepared by the Personnel Manager.

The record also reveals evidence of a bland unilateralism in accomplishing management objectives. On one occasion, prior to the six month period at issue but relevant as background, the company submitted an issue to a plant vote despite the absence of the required approval of the Plant Committee. In the 1967 and 1968 annual wage reviews, the Factory Workers Group discussed their upcoming requests with management before preparing their formal requests, asked the Personnel Manager's secretary to type them, then presented them two weeks in advance of the review. Management studied them, decided "what we are going to do", and discussed only the items the President wished to discuss. In 1968, for example, issues relating to vacation pay and a half holiday were simply not discussed.

Such evidence of negotiation as existed was pallid. In dealing with one request for a general wage increase, the two sides "dickered back and forth for a while" but not for long. The President testified about another occasion when the employee members did not accept a management offer. There was a recess for a week, after which the employees called back to accept the proposal. When asked what happened when the Factory Workers Group did not accept a position, the President recalled an instance where the company did reconsider a workers' request but "we were not prepared to do anything for them." When asked if meetings produced compromises, he replied, "If you call a compromise not giving completely their list and giving partially, yes." The Board could properly conclude that such a picture was one of subtle domination rather than of arm's length, vigorous give-and-take bargaining between two self-reliant groups.

■ This record goes beyond the factual situations in NLRB v. Prince Macaroni Mfg. Co., 329 F.2d 803 (1st Cir. 1964), and Coppus Engineering Corp. v. NLRB, 240 F.2d 564 (1st Cir. 1957), sufficiently so to bring it fairly within NLRB v. Dennison Mfg. Co., 419 F.2d 1080, 1085, 1086 (1st Cir. 1969), cert. denied, 397 U.S. 1023, 90 S.Ct. 1264, 25 L.Ed.2d 533 (1970). In the face of this evidence of domination the contentions of respondent that the employees have apparently been satisfied with the arrangement, having twice voted down an outside union, that there has been an absence of labor strife and anti-union bias do not command an opposite result.

■ We see no reason to excise from the Board's order to cease and de-

sist the injunction against interfering with employees' organizational rights "in any other manner". In this context there is a sufficient nexus between the offense committed and the future conduct proscribed. *Cf.* NLRB v. Simplex Time Recorder Co., 401 F.2d 547 (1st Cir. 1968). We do, however, balk at that part of the required notice to employees which states that the Board "has told us to post this notice and to keep our word about what we say in this notice." If the respondent's credibility has not been questioned, the suggestion of mendacity is a gratuitous slur; if sincerity is really a problem, one is not reassured by a declaration equivalent to the conversational gambit, "To be honest with you * * *." We would think that the Board's laudable effort to frame notices in plain English might be as well served by some such phrase as "The National Labor Relations Board * * * has told us to post this notice about what we are committed to do." *See, e. g.,* Love Box Co., Inc. v. NLRB, 422 F.2d 232 (10th Cir. 1970); Unit Drop Forge Division Eaton, Yale & Towne, Inc. v. NLRB, 412 F.2d 108 (7th Cir. 1969).

Remanded solely for appropriate rephrasing of the form of notice.