NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DOUGLAS & LOMASON COMPANY, Respondent.

No. 20527.

United States Court of Appeals, Eighth Circuit.

May 27, 1971.

Eugene B. Granof, Atty., Arnold Ordman, Gen. Counsel, Dominic L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Frank E. Specht, John G. Skinner, Robert C. Lemert, Jr., Malcolm D. Young, Jr., Smith, Currie & Hancock, Atlanta, Ga., for respondent.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY, District Judge.*

MATTHES, Chief Judge.

This case is before the Court on the petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq., for enforce-

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

ment of its order issued March 27, 1969, against Douglas & Lomason Co., respondent herein. The Board's decision and order are reported at 175 NLRB No. 18 (1969). No jurisdictional issue is presented.

The unfair labor practices, upon which the Board's order is grounded, occurred during an organization campaign in January and February of 1968 at respondent's Marianna, Arkansas plant, where respondent is engaged in the manufacture of automobile parts. At that time the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter Union) began organizing the respondent's employees. The Union (initially) filed charges alleging violations of § 8(a)(1) before it filed a representation petition on February 5, 1968, seeking an election among respondent's production and maintenance employees. The charges were amended for the last time on March 12, 1968; the initial complaint was issued by the Board on March 15, 1968; the Union won the election on March 27, 1968; and the case was heard before the trial examiner on June 12–14, 1968. The trial examiner filed his decision and recommended order on November 7, 1968. On December 2, 1968, respondent filed exceptions to some but not all of the examiner's findings of § 8(a)(1) violations. On March 27, 1969, the Board filed its order and decision in which it sustained two of respondent's exceptions but in all other respects affirmed the trial examiner's findings and recommendations and directed compliance with its decision and order. The Board failed, however, to file application for enforcement of its order until September 8, 1970.

It is settled doctrine that in the absence of unusual circumstances which we do not find here, and which are not claimed by respondent, the reviewing court will consider only the findings of the Board to which proper exception has been timely taken. N.L.R.B. v. District 50, United Mine Workers of America, 355 U.S. 453, 463–464, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958); N.L.R.B. v. Hawthorn Co., 404 F.2d 1205, 1211 (8th Cir. 1969); American Fire Apparatus Co. v. N.L.R.B., 380 F.2d 1005, 1006 (8th Cir. 1967); Section 10(e) of the Act (29 U.S.C. § 160(e)); 29 C.F.R. § 102.48(a). As respondent did not timely take exception to a number of the trial examiner's findings, the Board's order, insofar as the unchallenged findings are concerned, is entitled to enforcement.

I.

CONTESTED § 8(a)(1) VIOLATIONS

In issue here are the following findings of § 8(a)(1) violations: (1) whether a supervisor imposed more arduous working conditions upon employees; (2) whether respondent engaged in coercive alteration of pre-existing work practices (namely the posting of guards); and (3) whether the speech, delivered by the company president, during the organization campaign contained threats of more arduous working conditions in the event the Union becomes the bargaining agent of the employees.

After careful consideration, we are satisfied that the Board's findings as to (1) and (2) are not supported by substantial evidence on the record as a whole. Conversely, we find substantial evidence to sustain the Board's finding as to (3).

We have carefully examined President Lomason's anti-organization speech. No useful purpose would be served in reproducing it in this opinion. We deem it sufficient to observe that parts of the speech fall within the protection of § 8(c) of the Act. On the other hand, statements were made by the President which fully justified the Board's finding that they constituted threats of economic loss and the imposition of more arduous working conditions in the event the Union was successful and was selected as the bargaining representative for respondent's employees.

As stated by the Supreme Court in N.L.R.B. v. Gissel Packing Co., 395 U.S.

575, 617, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969):

> "Any assessment of the precise scope of employer expression, of course, must be made in the context of its labor relations setting. Thus, an employer's rights cannot outweigh the equal rights of the employees to associate freely, as those rights are embodied in § 7 and protected by § 8(a)(1) and the proviso to § 8(c). And any balancing of those rights must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear."

It is often difficult to determine whether the statements of management constitute an illegal threat to the employees in the event the Union should become the bargaining representative. However, where, as here, the Board's finding that the statement constituted an express or implied threat was a reasonable one, it will not be reversed on review even though a different inference or conclusion may seem more plausible and reasonable to the Court. See N.L.R.B. v. Louisiana Mfg. Co., 374 F.2d 696, 702–703 (8th Cir. 1967); Surprenant Mfg. Co. v. N.L.R.B., 341 F.2d 756, 760 (6th Cir. 1965).

We hold the Board's finding that the President's speech threatened more arduous working conditions was a reasonable and permissible one.

## II

## DELAYED APPLICATION FOR ENFORCEMENT

Respondent urges this Court to deny enforcement of the Board's order even if § 8(a)(1) violations are found. It asserts that it has complied with the order, other than the posting of the notice, and submits that inasmuch as no new unfair labor practice charges have been filed, "it would be inconsistent with the principles of equity" and it would not effectuate the policies of the Act for this Court to enforce the order at this time. At oral argument, respondent's counsel unequivocally stated that respondent had offered to voluntarily comply with the Board's order even to the extent of posting the notice which counsel felt was improper and offensive. At the Court's suggestion, counsel for respondent filed a written statement in this Court on May 17, 1971, which confirms the position advocated in oral argument that is, that respondent stands ready to fully comply with the Board's order in all respects. To off-set respondent's offer of voluntary compliance, the Board urges us to enforce the order contending in part that there is a past history of unfair labor practices by respondent, N.L.R.B. v. Douglas and Lomason Co., 333 F.2d 510 (8th Cir. 1964). The Board insists that further violations will likely occur in organizational campaigns in other plants of respondent which are presently unorganized.

■■ We do not condone the tardy action of the Board in seeking enforcement of its order. We believe that in all cases where the Board is sincere in filing and pressing charges it should, upon finding of violations, act promptly in seeking to enforce. Nevertheless, the law is clear that an employer's voluntary compliance with an order of the Board does not necessarily bar enforcement of its order. N.L.R.B. v. Mexia Textile Mills, 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067 (1950); N.L.R.B. v. Newberry Equipment Co., 401 F.2d 604 (8th Cir. 1968). Although we recognize that there are situations where an enforcement proceeding will become moot, we are not persuaded to hold, in light of all pertinent circumstances, that the Board is not entitled to an order of enforcement. See N.L.R.B. v. Raytheon Co., 398 U.S. 25, 27–28, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970); United States v. W. T. Grant, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); N.L.R.B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947).

## III

## NOTICE

■ Although as stated above, respondent has offered to voluntarily comply with the Board's order, including the posting of the notice contained therein, it nonetheless takes issue in its brief with the language of the notice and requests the modification thereof in the event we direct enforcement. We believe there is merit in respondent's attack upon the notice. It should be kept in mind that one of the prime purposes of the Board's remedy, in order to effectuate the policies of the Act, is to rectify the harm which may have resulted to the employees, and, therefore, the remedy should not "smack" of punitive action against the employer. Local 57, International Ladies' Garment Workers' Union v. N.L.R.B., 374 F.2d 295, 300 (D.C. Cir.) cert. denied 387 U.S. 942, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967), cert. denied 395 U.S. 980, 89 S.Ct. 2129, 23 L. Ed.2d 767 (1969).

■ The notice, which, of course, is a part of the order, should in a § 8(a) (1) case serve to inform the employees that the employer will not engage in practices found to be in violation of the employee's rights under the Act and the Board should refrain from including in the notice superfluous and ambiguous language which is more likely to confuse than inform the employees.

■ Upon careful examination of the notice, we hold that the following paragraph appearing on page 60 of the Appendix should be deleted from the notice:

After a trial at which all sides had the chance to give evidence, the National Labor Relations Board found that we, Douglas & Lomason Company, violated the National Labor Relations Act, and ordered us to post this notice and to keep our word about what we say in this notice.

The following shall be inserted in lieu thereof:

The National Labor Relations Board has found that we, Douglas & Lomason Company, have violated the National Labor Relations Act, and ordered us to post this notice informing you:

We further hold that the first sentence appearing at the top of page 61 of the Appendix, reading as follows:

The Board has ordered us to promise you that:

should be deleted and in lieu thereof, the following should be inserted:

We promise our employees that:

We further hold that the word "spying" appearing in the last paragraph of the notice should be deleted and the word "surveillance" inserted in lieu thereof.

To compel the respondent to post the notice as drawn in the Board's order, would suggest that respondent is only reliable under duress which we do not believe is justified by the record in this case. Love Box Co. v. N.L.R.B., 422 F. 2d 232, 236 (10th Cir. 1970); Unit Drop Forge Div. Eaton, Yale & Towne, Inc. v. N.L.R.B., 412 F.2d 108, 111 (7th Cir. 1969).[1]

■ Finally, the fourth full paragraph on page 61 of the Appendix, relating to the change in working conditions "in respect to talking while at work and in respect to being back at work" after breaks, should be deleted inasmuch as the finding upon which this part of the notice is premised is not supported by substantial evidence on the record as a whole.

The Board's order as modified is entitled to enforcement. It is so ordered.

---

[1]. We note parenthetically that in *Love Box Co.* and *Unit Drop Forge Div.* identical offensive and improper language was ordered stricken from the notice. We would hope that in the future the Board will not persist in engaging in the use of the stricken language in fashioning its remedy.