RAANAN KATZ, trustee, & another *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

Suffolk.     February 7, 1974. — May 28, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Anti-Discrimination Law.   State Administrative Procedure
Act.   Words,* "Substantial evidence."

Although a decision of the Massachusetts Commission Against Dis-
crimination was deficient because it failed to deal expressly with
certain evidence in its findings as required by G. L. c. 30A, § 11 (8), it
was not necessary to remand the case to the commission where the
evidence not treated was in most part in direct contravention of
findings made and so by implication considered not credible and was
otherwise relatively unimportant and not the basis for the final
determination. [361-363]

In a suit in equity under G. L. c. 151B, § 6; c. 30A, § 14, for review of a
decision by the Massachusetts Commission Against Discrimination,
a contention by the plaintiffs that the complaint to the commission
was defective was not considered where that issue was not raised
before the commission and there were not extraordinary circum-
stances causing the failure to raise it. [364]

There was no merit in a contention by the owner and the manager of an
apartment complex that findings of discriminatory practices on their
part made by the Massachusetts Commission Against Dis-
crimination were not supported by the evidence and subsidiary
findings where the commission found that two men, one black, one
white, made applications as prospective tenants presenting like

---

qualifications in all important particulars and that the application of the black man was rejected and that of the white man quickly accepted, and warrantably inferred that the black man was refused an apartment solely because of his color. [364-365]

Where one of the orders of the Massachusetts Commission Against Discrimination in a certain case required the owner and manager of an apartment complex to include an "equal opportunity listing" statement in any advertisement made within a specified time or in a specified number of separate advertisements, whichever proved longer, and the issuance of such an affirmative order was clearly within the commission's authority and relevant to the matter before it, failure of the Superior Court, in a suit in equity to review the decision of commission, to include such order in a decree requiring compliance with the other orders was error. [365-367]

BILL IN EQUITY filed in the Superior Court on July 22, 1971.

The suit was heard by *Vallely*, J.

The case was submitted on briefs.

*Jordan L. Ring* for the plaintiffs.

*Robert H. Quinn*, Attorney General, & *Stephen R. Ross*, Deputy Assistant Attorney General, for Massachusetts Commission Against Discrimination.

HENNESSEY, J. Raanan Katz, as trustee of Ayer Real Estate Trust, and Arnold Reingold appeal from a final decree of a Superior Court judge.[1] The commission also appeals from the same decree. The decree arose out of a bill by trustee Katz and Reingold in the Superior Court for review under G. L. c. 151B, § 6, of certain orders of the commission. After hearing, the commission had issued "Findings of Fact, Conclusions of Law and Orders."

In summary, the orders were that trustee Katz and Reingold (1) shall cease and desist from denying rentals or leases by reason of race, color, religion, national origin or ancestry; (2) shall, in all newspaper advertisements concerning real estate sales or rentals during the first six months after the order of the commission or twenty-six successive advertisements whichever is longer, give notice that each of the properties offered is an "equal opportunity

---

[1] Edward Reingold was named as a party and the order of the commission was also directed against him, but he did not seek review in the Superior Court.

listing"; (3) shall pay John Wilson, the complainant, $1,000 for out-of-pocket losses and damages for mental anguish and humiliation; and (4) report to the commission within thirty days after the order on what steps had been taken to comply with the order.

The Superior Court decree now appealed from ordered compliance with paragraphs 1, 3, and 4 of the order of the commission. The judge declined to include in the decree paragraph 2 of the commission's order concerning equal opportunity advertising.

Katz and Reingold argue that the findings of the commission are unsupported by substantial evidence, and that Wilson's complaint is overbroad and vague, and sets forth no valid complaint. Although it is not entirely clear, we conclude that Katz and Reingold also argue that the commission failed to comply with the statutory requirement that it must make findings as to all issues of fact or law necessary to its decision.

The commission appeals from the judge's failure to include in his decree the substance of its order concerning "equal opportunity" advertising.

We conclude that the judge was correct in ordering in his decree the enforcement of paragraphs 1, 3, and 4 of the commission's order. However, we also conclude that it was error not to order in the decree that paragraph 2 of the commission's order shall also be enforced.

The commission made no findings as to certain evidence presented by Katz and Reingold. It made lengthy and detailed findings as to the remaining evidence. Its findings as to major aspects of the evidence are summarized as follows.

John Wilson is married and is employed at the General Electric Company in Lynn, Massachusetts, and has been since November 3, 1969. Wilson is black. Raanan Katz is the sole owner of the Bay View apartment complex on Bay View Terrace in Danvers, Massachusetts. Said property is held in the name of Ayer Real Estate Trust and Katz is the sole trustee of said trust. Katz is white. Edward Reingold is the resident manager-superintendent of the above men-

tioned Bay View apartment complex, and Arnold Reingold oversees the operation of the Bay View apartment complex. Edward and Arnold Reingold are white.

On or about November 6, 1969, Wilson observed an advertisement in the Boston Globe newspaper. The advertisement made reference to an apartment for rent at the Bay View apartments, on Bay View Terrace in Danvers, Massachusetts. In response to this advertisement, Wilson called the number contained therein and made an appointment to see the apartment that day.

On that same day, Wilson arrived at the Bay View apartment complex and was admitted to the apartment of Edward Reingold, who showed Wilson through his apartment inasmuch as it was the same as the apartment that was advertised for rent in the newspaper. Wilson filled out a rental application and was told that an apartment would be available on December 1, 1969. Reingold also told Wilson that it would take three days to process his application and that he should check back with him on Saturday, November 8, 1969, as to whether his application was accepted.

On or about Saturday, November 8, 1969, Wilson returned to Edward Reingold's apartment and was told by Reingold that his application had been rejected because he had been employed by the General Electric Company for only one week.

Approximately one week later, Wilson spoke to one David E. Collins and told him that he had been unable to secure an apartment at the Bay View apartments because he had been employed at General Electric Company for only one week.

Collins subsequently called the Bay View apartments and asked whether there was a vacancy for December 1. Collins was told that there was such a vacancy and made an appointment to see an apartment on November 13, 1969. On that date Edward Reingold showed Collins through his apartment, saying that it was similar to the apartment that was to be vacant and available on December 1. Using a fictitious name, Collins filled out a rental application using similar information as Wilson had used when he had filled

out his application, including the fact that he had been employed at General Electric Company for less than one week and that his previous employment position was as a teacher in New Jersey. After the application was completed, Edward Reingold told Collins to check back with him on Saturday, November 15, 1969, to see whether his application had been accepted. Collins, on Sunday, November 16, 1969, was told by Edward Reingold that he could have the apartment on December 1, 1969.

Katz and Arnold Reingold discuss and set rental policies for the Bay View apartment complex and Arnold Reingold implements those policies. Katz gives instructions to Edward Reingold concerning the day-to-day physical operation of the Bay View apartment complex, and Katz also reviews rental applications for the Bay View apartment complex and rejects or accepts prospective tenants, as the case may be. Arnold Reingold was the individual who actually disapproved Wilson's rental application.

Arnold Reingold and Edward Reingold are brothers, and because of this relationship they met and talked informally from time to time, and in some of their conversations they discussed the operation of the Bay View apartments. Arnold Reingold visited the Bay View apartment complex in his official capacity as general manager of that property at least once a week.

The ultimate finding of the commission was that the sole reason the complainant was not offered the premises was because of his color, not because of the length of his service at General Electric Company.

1. We consider first the argument by Katz and Reingold that the commission failed to make certain necessary findings of fact.

It is clear that the commission made no express findings concerning certain evidence which, if accepted by it as true, might well have had a crucial bearing on its ultimate findings in the case. There was evidence offered by Katz and Reingold that the Ayer Real Estate Trust and its employees had a policy not to rent units to General Electric Company trainees since they were subject to transfer after

training notwithstanding their obligations under a lease. Arnold Reingold testified that he disapproved the application of Wilson for the reason that he had been employed by the General Electric Company for one week and because of the policy of the trust. He also testified that he was unaware of Wilson's race until after Wilson had filed a complaint with the commission.

There was also evidence that Wilson used out-of-State bank references on his application, but no evidence appeared as to what references, if any, Collins used. Further, there was evidence that Collins's application had never been submitted to Arnold Reingold as had Wilson's, and that there was no apartment available to rent to Collins at the time in question. Katz testified that he had never met Wilson and was out of the country at the time of these incidents.

General Laws c. 30A, § 11 (8), inserted by St. 1954, c. 681, § 1, provides that "[e]very agency decision shall be in writing or stated in the record. The decision shall be accompanied by a statement of reasons for the decision, *including determination of each issue of fact or law necessary* to the decision" (emphasis added). *Strong* v. *Massachusetts Commn. Against Discrimination*, 351 Mass. 554, 556 (1967). Likewise, G. L. c. 151B, § 5, as appearing in St. 1963, c. 613, § 2, provides that "the commission shall state its findings of fact."

On other occasions we have found it necessary to remand cases to the Massachusetts Commission Against Discrimination because of the failure of the commission to comply with the statute by making necessary findings of fact. Such deficiencies do not necessarily indicate that the commission's ultimate decision was not sufficiently supported by its subsidiary findings or warranted by the evidence; rather, the indication is that relatively important evidence was ignored by the commission in its reported findings.

In *School Comm. of Chicopee* v. *Massachusetts Commn. Against Discrimination*, 361 Mass. 352, 354-355 (1972) we said, in remanding the case for further findings: "We

recognize that where the evidence is conflicting, the administrative agency is charged with the responsibility of making findings of fact and is in the best position to judge the credibility of the witnesses. G. L. c. 30A, § 11 (8); c. 151B, § 5. However, that rule does not relieve an agency of its duty to make subsidiary findings of fact on all issues relevant and material to the ultimate issue to be decided. Nor does it relieve the agency of the duty to set forth the manner in which it reasoned from the subsidiary facts so found to the ultimate decision reached. . . . In the present case, no subsidiary findings were made on important portions of evidence which, in our view, are relevant and material to the ultimate decision reached by the Commission. On the record before us, we cannot determine whether the Commission disbelieved those portions of the evidence on which no subsidiary findings were made, or believed them but considered them not determinative of the ultimate issue." See also *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 593 (1964), where we reached a similar conclusion.

Nevertheless we conclude that there is no necessity to remand the instant case for further findings. The findings of the commission establish inescapably that it did not accept this additional evidence as credible, since for the most part it was in direct contravention of the findings made. The evidence which was not thus treated by clear implication was of relative unimportance, and clearly could not have been determinative of the ultimate decision.[2] This was not the situation in the *Chicopee* case, *supra,* where the evidence not mentioned in the findings did not directly contradict the findings. On a reading of the entire record, we believe that it would be an empty gesture to remand this case to the commission for what we consider would be inevitable findings that it did not accept as true the additional evidence.

---

[2] Evidence that Katz was abroad at the time of the incident falls in this category since, on the facts found, Katz clearly was responsible for the policy of the trust and for the decisions of the Reingolds.

We add that it is unfortunate that, once more, despite the *Chicopee* and *New York Cent.* cases, *supra*, we again have been faced with a case wherein the commission failed to treat important evidence in its findings. If believed, the additional evidence might well have been controlling as to the ultimate decision. Even though our examination of the record convinces us that all of the significant evidence was dealt with either directly or by necessary implication, it is clear that the commission should have expressly dealt with the evidence. It is merely fortuitous that the commission's failure to prepare full fact findings does not in this particular case result in reversal.

2. Katz and Reingold argue that Wilson's complaint should have been dismissed as vague and overbroad. We are not inclined to agree with that contention, but in any event we do not reach the issue because it was not seasonably raised before the commission by Katz or Reingold. General Laws c. 151B, § 6, inserted by St. 1946, c. 368, § 4, provides: "No objection that has not been urged before the commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." No extraordinary circumstances are shown here as an excuse as to this statutory requirement. We stated in the case of *Massachusetts Commn. Against Discrimination* v. *Colangelo,* 344 Mass. 387, 399 (1962): "In subsequent cases, however, the parties will be on notice from this opinion, as well as from the statute, that they should raise before the commission any issues which they intend to present upon a judicial review of the commission's decision."

3. We reject the contention of Katz and Reingold that the ultimate findings here were not supported by the evidence and the subsidiary findings.

General Laws c. 151B, § 6, as amended by St. 1954, c. 681, § 13, provides that "[t]he order or decision of the commission shall be reviewed in accordance with the standards for review provided in paragraph (8) of section fourteen of chapter thirty A." Paragraph (8) of § 14 permits a reviewing court to set aside the decision of an agency if it

determines "that the substantial rights of any party may have been prejudiced because the agency decision is . . . (e) Unsupported by substantial evidence."

The test then is whether there is substantial evidence to support the order of the commission. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. G. L. c. 30A, § 1 (6). *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 251 (1966).

Clearly there was substantial evidence here to support the commission's order, and these findings were in turn warranted on the evidence. In reaching this conclusion we consider, on reasoning shown, *supra*, that the evidence not treated in the findings was not accepted as true.

The commission was warranted in concluding, as it did, that two men, Wilson and Collins, presented qualifications as prospective tenants that were alike in every important particular, except that Wilson is black and Collins is white. The application of Wilson was rejected and the application of Collins was speedily accepted. The commission was warranted in inferring that Wilson was refused an apartment solely because of his color.

4. We conclude that there was error of law in the judge's failure to include in the decree paragraph 2 of the commission's order which dealt with equal opportunity advertising.

That part of the commission's order read as follows: "2. Include in each advertisement which said Respondents either directly or indirectly as real estate owners, operators, managers or brokers, cause to be published in any newspaper offering properties for sale or rental, a statement in form satisfactory to the Commission, giving notice that each of the properties offered by the Respondents is an 'equal opportunity listing.' Said statement should appear in every said advertisement published during the first six (6) months after the date of the service of this Order or Twenty-six (26) separate advertisements which ever is longer after which it may be discontinued."

We hold, contrary to the judge's ruling, that the order

encompassed in paragraph 2 was within the statutory jurisdiction of the commission. General Laws c. 151B, § 5, as appearing in St. 1963, c. 613, § 2, grants authority to the commission to issue affirmative orders as follows: "If, upon all the evidence at the hearing the commission shall find that a respondent has engaged in any unlawful practice as defined in section four . . . the commission . . . *shall* issue and cause to be served on such respondent an order requiring such respondent . . . to take such *affirmative action . . . as, in the judgment of the commission, will effectuate the purposes of this chapter* . . . . Such cease and desist orders and orders for affirmative relief may be issued to operate *prospectively*" (emphasis supplied).

The commission urges, and we think correctly, that we should bear in mind that the clear purpose of G. L. c. 151B is to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth; that the Legislature specifically provided in § 9 of c. 151B that the statute is to be liberally construed to meet its goals; and that the court is required by G. L. c. 30A, § 14 (8), to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." We apply these several considerations here in the light of the language in G. L. c. 151B, § 5, cited *supra*, which authorizes the commission to take such affirmative *prospective* action as will in its judgment effectuate the purposes of c. 151B.

Not only does the advertising order bear an appropriate relation to the purposes of G. L. c. 151B, but it has direct relevance to the unlawful practices of Katz and Reingold. Wilson first came in contact with the Bay View apartment complex because of a newspaper advertisement offering an apartment for rent. The record also discloses that the advertising was not a one-time effort but was part of an ongoing program of similar advertising by the trust. There were no black tenants in any of the apartments comprising the Bay View apartment complex. The commission could properly conclude, as it obviously did, that the advertising

program bore a causal relationship to the racial discrimination which the commission found.

The order is not excessive in its breadth. It does not compel advertising as such but merely requires modification of any advertising that is placed. It affects only the advertisement for a six-month period or twenty-six advertisements, whichever is longer. These requirements are not unreasonably burdensome. They are consistent with orders of some Federal courts which, when acting on complaints of racial discrimination in housing in violation of 42 U. S. C. § 3601 et seq. (1970) (the Fair Housing Act), have interpreted § 3613 of the act as authorizing them to enter advertising orders almost identical to that issued by the commission in this case. *United States* v. *West Peachtree Tenth Corp.* 437 F. 2d 221, 229 (5th Cir. 1971). *United States* v. *Real Estate Dev. Corp.* 347 F. Supp. 776 (N. D. Miss. 1972). It is common practice also in labor and equal opportunity cases for agencies and courts to order employers to post prospective notices to aid in effectuating the policies behind the decision. See e.g., *National Labor Relations Bd.* v. *Express Publishing Co.* 312 U. S. 426 (1941); *National Labor Relations Bd.* v. *Reed Rolled Thread Die Co.* 432 F. 2d 70 (1st Cir. 1970).

5. The final decree in the Superior Court was correct in all respects except that it failed to order compliance with paragraph 2 of the commission's order. For that reason the final decree is reversed and a new final decree is to be entered which directs compliance with paragraphs 1, 2, 3, and 4 of the commission's order.

*So ordered.*