New York & Massachusetts Motor Service, Inc. *v.* Massachusetts Commission Against Discrimination.

NEW YORK AND MASSACHUSETTS MOTOR SERVICE, INC. *vs.*
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
& another.[1]

Hampden. September 1i, 1987. — January 19, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Administrative Law*, Judicial review, Substantial evidence. *Anti-Discrimination Law*, Religion, Burden of proof, Damages. *Employment*, Discrimination. *Constitutional Law*, Equal protection of laws. *Damages*, Under anti-discrimination law, Back pay. *Interest.*

On review of a determination by the Massachusetts Commission Against Discrimination that an employer had discriminated against an employee on the basis of his religion, this court concluded that substantial evidence supported the commission's findings that the employer could have redistributed the complainant's duties among its other employees in order to accommodate his religious observances, and that the employer applied a stricter standard of accommodation to the complainant than to other employees. [572-576]

An employer in a proceeding before the Massachusetts Commission Against Discrimination on a complaint by an employee that he was discriminated against on account of his religion did not demonstrate that redistributing the complainant's duties among other employees in order to accommodate his religious needs would impose an undue hardship on the employer or would entail more than a minimal cost. [577-579]

The statutory scheme embodied in G. L. c. 151B, §§ 5 and 9, setting forth the procedures for adjudication of claims of unlawful employment practices before the Massachusetts Commission Against Discrimination, does not deprive employers of any fundamental right, including the Federal constitutional right to equal protection of the laws, by reason of asymmetry between the employer's and the employee's respective access to judicial consideration of a claim. [579-581]

An award by the Massachusetts Commission Against Discrimination of back pay damages to a complainant on account of unlawful religious discrimination in his employment was remanded for recalculation, to avoid overcompensation, by deducting the amount of unemployment compensation the complainant had received after his discharge, where,

[1] James A. Mislak.

401 Mass. 566                                                567

New York & Massachusetts Motor Service, Inc. *v.* Massachusetts Commission Against Discrimination.

due to the lapse of time, the director of the Division of Employment Security was precluded from redetermining the complainant's eligibility for compensation in light of the damages award and recovering the amounts paid. [581-583]

The Massachusetts Commission Against Discrimination did not err in calculating interest on a back pay award, in conformity with G. L. c. 231, § 6B, at the rate of twelve per cent per annum from the commencement of the proceedings to the date of payment. [583-584] LYNCH, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on October 23, 1985.

The case was heard by *Elizabeth A. Porada*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Mark I. Zarrow* for the plaintiff.

*Gerald R. Hegarty* for James A. Mislak.

*Leslie B. Greer* for Massachusetts Commission Against Discrimination.

ABRAMS, J. New York and Massachusetts Motor Service, Inc. (New York-Mass), appeals from a judgment of the Superior Court affirming a determination of the Massachusetts Commission Against Discrimination (commission) that New York-Mass discriminated against the complainant, James A. Mislak, on the basis of his religion, and awarding Mislak lost wages and interest. New York-Mass argues four grounds for reversal that: (1) the decision of the commissioner, as affirmed by the full commission, was not supported by substantial evidence; (2) G. L. c. 151B, § 4 (1A) (1986 ed.), may not constitutionally require an employer to bear more than a de minimis cost in attempting reasonably to accommodate an employee's religious needs, and New York-Mass was required to bear more than a de minimis cost; (3) the procedure for adjudication of discrimination claims under G. L. c. 151B, §§ 5 and 9, violates an employer's right to equal protection of the laws; and (4) the commission committed error in determining damages. We affirm in part and remand in part.

On December 9, 1981, Mislak filed a verified complaint with the commission alleging that his employer, New York-

Mass, discriminated against him on the basis of his religion in violation of G. L. c. 151B, § 4 (1A), and Title VII of the Civil Rights Act of 1964. Mislak alleged that New York-Mass denied his repeated requests for a leave of absence from October 13 to October 20, 1981, in order to observe holy days of his religious institution, the Worldwide Church of God. Mislak further alleged that New York-Mass subsequently terminated his employment for observing his holy days.

The investigating commissioner found probable cause to credit the allegations in Mislak's complaint. After a hearing, the single commissioner found that New York-Mass had discriminated against Mislak on the basis of his religion. The single commissioner ordered New York-Mass to pay Mislak the wages he lost as a result of his termination, as well as interest thereon at a rate of twelve per cent per annum from the date the complaint was filed until the date payment was made. New York-Mass appealed to the full commission, which affirmed the single commissioner's decision with some modifications.[2] New York-Mass sought review in the Superior Court. The judge affirmed the commission's decision and order. We granted New York-Mass's application for direct appellate review.

We summarize the facts found by the single commissioner and adopted by the full commission. James Mislak resides in Chicopee, and is a member of the Worldwide Church of God. His former employer, New York-Mass, is a corporation engaged in the freight delivery business in Springfield and in New York City. New York-Mass is owned by Paul A. Dubrey, Jr., who also serves as New York-Mass's president and treasurer. Dubrey operates the business jointly with his father, Paul A. Dubrey, Sr. Mislak began work as a truck driver for New York-Mass in May, 1979.

---

[2] The commissioner found, based on the evidence, that New York-Mass could reasonably have accommodated the religious needs of Mislak, who was a truck driver, by redistributing his duties among the remaining drivers. The full commission affirmed that conclusion, and also found that New York-Mass could have accommodated Mislak by hiring a substitute driver with the vacation pay that Mislak had offered to refund to the company.

Mislak joined the Worldwide Church of God in August, 1975. Members of the Worldwide Church of God observe the Sabbath from sundown on Friday until sundown on Saturday, during which time they may not work. Church members observe several holy days on which work is forbidden: the Days of Unleavened Bread,[3] Pentecost, the Feast of Trumpets, the Day of Atonement, the Feast of Tabernacles, and the Last Great Day. The Feast of Tabernacles lasts eight days, of which the last is the Last Great Day. During the Feast of Tabernacles, church members are required to leave their homes, and "go to a specific location where God has said his name." Church members are forbidden to work on the eight days of the Feast of Tabernacles, and are required to attend four hours of church services daily.

When he was hired by New York-Mass in May, 1979, Mislak informed Paul Dubrey, Sr., that he would be unable to work from sunset Friday until sunset Saturday. Dubrey told Mislak that New York-Mass could work around his Sabbath observance. New York-Mass accommodated Mislak's needs by getting him off the road before sundown. In the fall of 1979, Mislak requested vacation time corresponding to the Feast of Trumpets, the Day of Atonement, and the Feast of Tabernacles. Mislak did not inform his employer that the requested time was needed for his religious observances. New York-Mass granted the request. In 1980, Mislak requested time off to observe all of that year's holy days.[4] That request was granted. In 1981, Mislak did not have to request vacation for the spring holy days, because they fell on days he was not scheduled to work. In March or April, however, Mislak marked the company vacation calendar for September 29 (Feast of Trumpets), October 8 (Day of Atonement), October 13-19 (Feast of Tabernacles), and October 20 (the Last Great Day). Mislak informed Paul Dubrey, Jr., that he needed the vacation days in order to

---

[3] The Days of Unleavened Bread apparently correspond roughly to the Jewish Passover. The observance lasts seven days, of which only the first and the last are considered "holy days."

[4] It is unclear from the record whether Mislak informed his employer of the reason for the requested time off in 1980.

observe his holy days; Dubrey informed Mislak that he could take September 29 and October 8, but that he could not take vacation for the week of October 13 through October 20.

Dubrey told Mislak that it was company policy that only one employee take vacation at a single time and that two employees, Clarence and George Babcock, were already scheduled to take vacation during that week. Clarence Babcock had requested vacation from October 13 through October 30, and George Babcock had requested vacation from October 19 through October 30. The Babcocks had longer tenure at New York-Mass than did Mislak. Dubrey told Mislak that he could not have the requested week off unless he worked it out with the Babcocks. Mislak approached George Babcock about the vacation problem, but because Babcock and his father (Clarence) planned to attend a family reunion in Texas, Mislak did not ask them to switch weeks.

Several weeks later, Mislak spoke with Paul Dubrey, Jr., offering his two weeks' vacation pay so that New York-Mass could hire a replacement driver for the six days in question. Dubrey again informed Mislak that he could not have the time off. Subsequent to this conversation, in June, 1981, Mislak obtained a request for excused absence from his minister and presented it to Paul Dubrey, Jr. The minister's letter informed Dubrey that Mislak was required to be on Cape Cod for the religious observances. Dubrey again refused to grant Mislak the requested time off, citing another employee's need to drive his wife to Boston for chemotherapy every Monday, and another employee's need to go to court for divorce proceedings one day each week.

Sometime in October, Mislak again spoke with Paul Dubrey, Jr., about the vacation time; Dubrey told Mislak that he might be able to take one or two days off, but that he would not be able to take the entire week. On the evening of October 10 (a Saturday), Mislak went to the office to check the schedule for the coming week. Finding that he was scheduled to work October 13, Mislak called Paul Dubrey, Sr., at home and informed him that he could not work that day. Dubrey responded by telling Mislak that if he kept the holy day, he would lose his

job. Mislak did not report for work during his holy days, and when he returned to work on the evening of October 21, the Dubreys informed him that he no longer had a job.

In her order, the commissioner found that (1) New York-Mass could reasonably have accommodated Mislak's religious needs by redistributing Mislak's runs among the remaining drivers; and (2) New York-Mass applied a stricter standard to Mislak's request for time off than it did to similar requests of other employees. The commissioner noted that Mislak requested the time off six months in advance, allowing New York-Mass substantial time to arrange an accommodation for Mislak. The commissioner credited Paul Dubrey, Jr.'s testimony that New York-Mass needed twelve drivers to operate its business, but found that the company had fourteen drivers available during the week ending October 10, 1981, and thirteen available during the weeks ending October 17, 24, and 31, 1981. The commissioner also found that New York-Mass, a nonunionized company, had flexibility in reassigning drivers and other employees.

The commissioner also found inconclusive the evidence presented to demonstrate that New York-Mass was unable to fill all its orders during the period of Mislak's absence. The commissioner found that during the weeks when Mislak, the Babcocks, and other employees were absent, the company earned more revenue than during any other weeks from September 5 to November 28, 1981, with the exception of one week in November. Moreover, although New York-Mass had thirteen drivers working during the weeks ending October 17 and 31, 1981, the number of hours worked during those weeks totalled 418.40 and 601.51 respectively. The commissioner concluded from this fact that the number of drivers working was not solely determinative of the amount of hours worked.

The commissioner found that, although New York-Mass purported to enforce a one-man-off vacation policy, the policy was applied selectively. The commissioner noted that both Clarence and George Babcock were allowed to be away from October 16 through October 30; that another employee was permitted to take off each Monday during that same period in

order to take his wife for chemotherapy treatments; that a different employee was allowed to take off October 20 to attend to legal business; and that yet another employee was excused on October 23 also to attend to legal affairs. The commissioner also found that, although three days during the week Mislak requested off were days on which both Babcocks also would be absent, the company allowed two other employees to be absent on two of those days and denied Mislak the same accommodation. With this factual background in mind, we turn to New York-Mass's allegations of error.

1. *Substantial evidence.* A reviewing court may set aside the final determination of an administrative agency if the court "determines that the substantial rights of any party may have been prejudiced because the agency decision is — . . . (e) Unsupported by substantial evidence . . . ." G. L. c. 30A, § 14.[5] As defined in G. L. c. 30A, § 1 (6), " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." See *Katz* v. *Massachusetts Comm'n Against Discrimination,* 365 Mass. 357, 365 (1974). We conclude that substantial evidence supported the commission's findings and order.

First, the commissioner's finding that New York-Mass could have accommodated Mislak's religious holidays by redistributing his duties among the other drivers is supported by evidence that (1) Mislak allowed New York-Mass a substantial amount of time to respond to his request; (2) New York-Mass, a nonunionized company, had flexibility in reassigning its employees; (3) the number of drivers available for work during Mislak's holy days never fell below the twelve necessary to operate the company; (4) New York-Mass earned more revenue during the week of Mislak's absence than at almost any other time during the period between September 5, 1981, to November 28, 1981;[6] and (5) the aggregate number of hours worked by

---

[5] Although G. L. c. 151B, § 6, refers to paragraph (8) of G. L. c. 30A, § 14, the provision for judicial review of agency decisions is actually in paragraph (7).

[6] New York-Mass asserts that the findings by the commission are deficient because the commissioner did not specifically find that Paul Dubrey's testi-

401 Mass. 566                573

New York & Massachusetts Motor Service, Inc. *v.* Massachusetts Commission Against Discrimination.

New York-Mass's drivers in a given week was not solely dependent on the number of drivers available.[7] Accordingly, we think that the commissioner's finding that New York-Mass could have redistributed his duties among the other drivers is supported by substantial evidence.

New York-Mass also contends that it did not apply a stricter standard of accommodation to Mislak, because as Paul Dubrey, Jr., testified, two other employees[8] who were allowed time off during the Babcocks' vacation made up the time that they missed. We agree with the full commission that this testimony, even if true, was irrelevant to the single commissioner's deter-

---

mony as to lost business was untrue. New York-Mass asserts that the commissioner did not make complete, specific subsidiary findings of fact on an issue bearing on the determination of the discrimination claim. See *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 363 (1974), and therefore the case must be remanded to the commission. We do not agree. The commissioner's subsidiary findings support her conclusion that New York-Mass did not lose revenue during the period Mislak was absent; thus we need not remand the case for further findings on what evidence the commissioner rejected as not credible.

New York-Mass also contends that the commissioner failed to consider Mislak's testimony that he did not attempt to switch vacation time with the Babcocks, and that such a failure requires us to remand the case to the commission. We do not agree. The commissioner specifically found that Mislak had approached George Babcock, but because he and his father had planned to attend a family reunion in Texas, Mislak did not ask him to switch weeks. On those facts, the commissioner could draw the inference that such a request would be futile.

[7] As New York-Mass correctly points out, the week ending October 17 included the Columbus Day holiday (October 12) and New York-Mass's drivers worked only four days during that week. However, the commissioner's failure to note the holiday is not prejudicial error. For the week ending October 17, the thirteen drivers worked an aggregate of 104.6 hours per day, whereas during the week ending October 31, the thirteen drivers worked an aggregate of 120.30 hours per day. Thus, the commissioner's conclusion that the number of drivers did not solely determine the number of hours worked is based on a per day total.

[8] New York-Mass contends that the commissioner erred in considering the time off taken by one of these employees, Ranney, because the requested vacation day was October 23, which fell outside the period of vacation time Mislak sought. The commissioner could consider this evidence. October 23 was a day when both Babcocks were absent; Ranney's request for time off thus paralleled Mislak's and Ranney received the requested time off, while Mislak did not.

mination, because Mislak was never offered a similar option of making up the time he would miss. New York-Mass offered no evidence to suggest that Mislak's ability or willingness to make up missed workdays had any bearing on its decision to deny him the time off.

New York-Mass makes several arguments to illustrate a lack of discriminatory intent. First, New York-Mass argues that the commissioner failed to attach the proper significance to evidence that the company allocated vacation time on the basis of an employee's seniority. Both Clarence and George Babcock were senior to Mislak, as were the other drivers who received time off. New York-Mass asserts that in order to keep its Massachusetts operation nonunionized, it offered to its Massachusetts employees the same benefits that were available to the company's union employees in New York. At the core of those benefits was recognition of seniority. New York-Mass's argument essentially challenges the weight the commissioner accorded this testimony as opposed to testimony that New York-Mass maintained a nonunionized operation in Springfield in order to allow the company greater flexibility than a union contract would permit. It is the function of the commissioner to determine the weight to be accorded competing testimony and evidence; it is not the function of this court to second-guess the commission's determination unless it is not supported by substantial evidence. See *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 224 (1978) ("Courts must defer to an administrative agency's fact-finding role, including its right to draw reasonable inferences from the facts found").[9]

---

[9] As a separate argument on the question of discriminatory intent, New York-Mass relies on the commission's decision in *Parkhurst* v. *G.M. Indus., Inc.*, 5 Mass. Discrimination L. Rep. 1714 (1983), to support its argument that the commissioner failed to take proper account of the accommodations that New York-Mass had made for Mislak with regard to his prior Sabbath observances; with regard to his absence on September 29 and October 8; and with regard to New York-Mass's offer of a partial accommodation if business was slow during October 13-20.

We will not disturb the weight the commission afforded these prior accommodations. Moreover, in *Parkhurst*, the commissioner found that a

New York-Mass argues that the commission impermissibly substituted its business judgment for that of New York-Mass in finding that New York-Mass reasonably could have accommodated Mislak's religious obligations. For support, New York-Mass relies on this court's decision in *Smith College* v. *Massachusetts Comm'n Against Discrimination, supra* at 229, in which we stated: "If a complainant proves a prima facie case of unlawful discrimination, the burden is then shifted to the respondent to produce a lawful explanation for the treatment accorded the complainant. . . . That explanation must consist of not only a nondiscriminatory reason for the respondent's action but also credible evidence indicating that the reasons advanced were the real reasons. . . . The fact finder has a particularly delicate function. The managerial decision may be unsound or even absurd, but, if the reason given for the decision is the real reason and is nondiscriminatory, the [commission] has no authority to grant relief from that decision." (Citations omitted.) New York-Mass's contention is without merit.

The language of G. L. c. 151B, § 4 (1A),[10] essentially outlines a three-part inquiry in any case involving allegations of

---

total accommodation to the employee's request for time off would have imposed an undue hardship on the employer. *Id*. at 1722-1723. Thus, the question whether the employer had offered a partial accommodation which would not have burdened the employer unduly was a relevant inquiry. In this case, however, the commissioner concluded that a total accommodation of Mislak's need for time off would not have burdened the company unduly. Thus, an offer of a partial accommodation was of no consequence to the issue of discriminatory intent.

[10] General Laws c. 151B, § 4 (1A), provides, "It shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, his creed or religion as required by that creed or religion including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day and the employer shall make reasonable accommodation to the religious needs of such individual. No individual who has given notice as hereinafter provided shall be required to remain at his place of employment during any day or days or portion thereof that, as a requirement of his religion, he observes as his sabbath or other holy day, . . . provided, however, that any employee intending to be absent from work when so required . . . shall notify his or her employer not less than ten days in advance of each absence. . . . 'Reasonable Accom-

religion-based discrimination. Initially, the complainant must prove that the employer required the complainant to violate a religious practice which is required by the religion. *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 772 (1986). The complainant must also demonstrate he or she gave the employer the required notice of the religious obligations. The burden then shifts to the defendant-employer to prove that accommodation of the complainant's religious obligations would impose on the employer an undue hardship as defined by the statute. Finally, the commission determines whether the employer has demonstrated undue hardship. In analyzing a claim of undue hardship, the commission must inquire into the nature and operations of the employer's business to ascertain whether any of the conditions which might constitute undue hardship are present.

In addressing the issue of undue hardship, the commission also must focus on whether the employer could have exercised its managerial discretion in such a way that the employee's religious obligations could have been reasonably accommodated. Therefore, the commissioner's determinations that New York-Mass could have distributed Mislak's duties among its other drivers and that New York-Mass applied a stricter standard to Mislak's request for vacation time than it applied to other employees' similar requests does not improperly invade New York-Mass's business judgment.[11]

---

modation,' as used in this subsection shall mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business. The employee shall have the burden of proof as to the required practice of his creed or religion.

"Undue hardship . . . shall include the inability of an employer to provide services which are required by and in compliance with all federal and state laws, . . . or where the health or safety of the public would be unduly compromised by the absence of such employee or employees, or where the employee's presence is indispensable to the orderly transaction of business and his or her work cannot be performed by another employee of substantially similar qualifications during the period of absence, or where the employee's presence is needed to alleviate an emergency situation. The employer shall have the burden of proof to show undue hardship."

[11] New York-Mass's reliance on *Smith College* is inappropriate because discrimination on the basis of gender requires the application of different

2. *De minimis cost and undue hardship.* In her findings and order, the single commissioner determined that redistributing Mislak's duties among the remaining employees would have accommodated Mislak's religious needs without imposing an undue burden on the company. The full commission affirmed that determination and further concluded that New York-Mass could have reasonably accommodated Mislak's needs by hiring a substitute driver with the vacation pay that Mislak offered to refund to the company. New York-Mass challenges these findings on essentially two grounds. First, New York-Mass contends that the commissioner erred in concluding that it was reasonable to accommodate Mislak's religious needs by redistributing his duties among the other drivers. The company argues that this solution would require New York-Mass to bear more than a de minimis cost in accommodating Mislak's needs in violation of Federal standards. Second, New York-Mass argues that if G. L. c. 151B, § 4 (1A), is construed to require an employer to bear more than a de minimis cost in accommodating its employees' religious needs, the statute violates the establishment clause of the First Amendment to the Constitution of the United States. We need not consider the second contention.

With regard to the first contention, the commissioner found, "[New York-Mass] made various personnel adjustments between October 13 and October 20 to accommodate the lessened number of drivers. The night foreman, Jim Benoit, drove a truck; the night dispatcher, George Maynard, served as the foreman; and both Dubreys worked eighteen hours a day with Dubrey, Sr., driving a truck at times." New York-Mass argues

---

standards. In assessing a complainant's allegations of gender discrimination, this court has followed *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), which, in that factual context, requires the complainant to prove a four-element prima facie case: (1) that she is a woman; (2) that she applied and was qualified for the job for which the employer sought applicants; (3) that despite the complainant's qualifications, she was denied the position; and (4) that after the complainant's rejection, the position remained open and the employer still sought applications from individuals with qualifications similar to the complainant's. *Id.* at 802. *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 & n.5 (1976).

that these personnel adjustments imposed a greater than de minimis cost on the company and violated the standard defined in *TWA* v. *Hardison,* 432 U.S. 63 (1977). The burden of proving undue hardship under Federal law rests with the employer, see 42 U.S.C. § 2000e-j (1982); *Hardison, supra* at 74, and we think that New York-Mass has failed to shoulder this burden adequately.

New York-Mass first contends that the commissioner failed to consider that awarding Mislak time off for his religious holidays would have violated the seniority system by which New York-Mass traditionally allocated vacation preferences, a factor afforded great weight in *Hardison.* See *Hardison, supra* at 79. New York-Mass's contention miscasts the issue of accommodation in terms of a conflict between Mislak's need to fulfil his religious beliefs and the more senior employees' requests for simultaneous vacation. As the commissioner found, New York-Mass did not strictly follow the one-man-off vacation policy. Thus, New York-Mass could show undue hardship if it could establish that Mislak's absence would cause staffing levels to fall below the minimum level needed to operate the business. The evidence did not support such a finding. The commissioner found that, even with Mislak's absence, staffing at New York-Mass would not have fallen below the twelve employees needed to operate the business. Furthermore, the commissioner found that because the company was not unionized, the company could shift employees' positions and job functions without running afoul of a collective bargaining agreement. New York-Mass sought to keep its Springfield operation nonunionized to provide this flexibility. See *supra* at 571.

New York-Mass also failed to prove that it suffered undue hardship from Mislak's absence during the week prior to his termination. New York-Mass did not demonstrate that the personnel adjustments required by Mislak's absence imposed any cost, let alone more than a de minimis cost, on the company's operation. As the commissioner found that Babcocks, Jim Prouty, Clyde White, and Gary Ranney all were absent during Mislak's religious holidays; thus any hardship suffered during

this time was not solely attributable to Mislak. The commissioner also found that the weeks during Mislak's absence brought more revenue to New York-Mass than any of the eleven weeks from September 5, 1981, to November 28, 1981, with the exception of one week. Thus, it is clear that the commission's conclusion that New York-Mass failed to incur more than a de minimis cost in accommodating Mislak's religious needs is supported by substantial evidence.[12]

3. *Equal protection claim.* New York-Mass contends that the procedures outlined in G. L. c. 151B, §§ 5 and 9, violate the employer's right to equal protection of the laws because, under these statutes, the complainant may transfer the controversy to the Superior Court, but the defendant-employer may not. New York-Mass contends that this statutory scheme violates the employers' fundamental right to a trial before a court and is not supported by a compelling State interest. We do not agree.

New York-Mass admits in its brief that it did not raise this constitutional claim before the commissioner or before the full commission when it initially appealed the single commissioner's determination. When it was finally raised, the commission declined to entertain the claim on the grounds that the decision to allow a party to raise additional argument was within its discretion, that New York-Mass had offered no reason for the nearly six-month delay in raising the issue, and that the power to hold a statute unconstitutional exceeded the scope of the commission's power and authority. "As a general rule, a party is not entitled to raise an argument on appeal if the claim could have been raised, but was not raised, before the administrative agency." *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 382 (1985). See *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493 (1983); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 68 (1982). This principle is equally

---

[12] Because we have concluded that New York-Mass did not bear an undue burden within the meaning of *TWA* v. *Hardison*, we need not discuss the constitutional claim.

applicable to claims raising constitutional issues. *Langlitz, supra* at 382. *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 126 (1985).

Assuming the issue is properly before us, there is no merit to New York-Mass's contention. General Laws c. 151B, § 5, sets forth the procedure for adjudication of claims of unlawful employment practices before the commission. Pursuant to G. L. c. 151B, § 6, all orders of the commission are subject to judicial review in accordance with the standards of review set forth in G. L. c. 30A, § 14. Thus, the employer is not faced with a denial of access to the judicial system, but rather with a postponement of judicial adjudication at the complainant's option until after the commission has issued a preliminary determination and ordered a remedy based on its findings of fact. Any effect on the rights or privileges of employers as a class is limited to the differences between initial judicial adjudication of a discrimination claim, and a claim that reaches the court after an administrative hearing and determination.

New York-Mass has argued three such differences. New York-Mass contends, first, that in adjudicating a discrimination ' claim, the commission is not required to adhere to the strict rules of evidence; second, that to prevail before the commission, a complainant only need prove his or her claim by substantial evidence, not proof by a fair preponderance of the evidence as is required in court; and, third, that the scope of review of an administrative agency's findings of fact is narrower than that applied to the findings of fact of a trial judge inasmuch as findings of fact may be clearly erroneous (the standard of review for factual findings of a judge) without being so unreasonable as to be found not to be supported by substantial evidence (the standard for review for administrative findings). Whatever the merits, if any, of these distinctions, we do not believe that they, individually or collectively, rise to the level of a fundamental right. We conclude that the statutory scheme embodied in G. L. c. 151B, §§ 5 and 9, does not deprive employers of any fundamental right[13] and thus

---

[13] We note that in other contexts, there exists an asymmetry in access to the courts. For example, in Federal diversity cases, a defendant may not

does not violate the Fourteenth Amendment to the United States Constitution.

4. *Damages award.* New York-Mass contends that the commission improperly formulated Mislak's damages award. New York-Mass contends that the commission erroneously failed to deduct unemployment compensation received by Mislak from the amount of back pay the commission awarded as damages. New York-Mass also contests the commission's order that New York-Mass pay interest at the statutory rate of twelve per cent on the total back pay award from the date the complaint was filed until the date payment was made. We address each contention in turn.

a. *The damages award.* In her order, the single commissioner awarded Mislak $34,294.14 in back pay. The commissioner did not deduct the unemployment compensation Mislak had received ($5,430 for 1982 and $198 for 1983). New York-Mass contends that the commissioner's order results in a windfall for Mislak, because his unemployment benefits already partially compensated him for his lost wages.

In *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557 (1983), this court addressed the same question in the context of a Labor Relations Commission determination that unemployment compensation should have been deducted from an award of back pay made to school custodians who prevailed on a claim of breach of a collective bargaining agreement. In that case, this court upheld the commission's decision on the ground that it is within the commission's authority to fashion appropriate remedies for violation of the labor relations statute.[14] *Id.* at 381-382. As we noted in *School Comm. of*

remove the action to Federal court if the suit is brought in a State court of the State in which he or she or a codefendant resides. 28 U.S.C. § 1441 (b) (1982). Some actions are not removable at all. See 28 U.S.C. § 1445 (1982) (providing that actions brought under the Federal Employer's Liability Act, against receivers or trustees under the Interstate Commerce Act for losses under $3,000 or State Workers' Compensation actions may not be removed). See 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3729 at 487, 489 (1985).

[14] Like G. L. c. 151B, § 5, which empowers the Massachusetts Commission Against Discrimination to "take such affirmative action, including but

*Newton*, the commission deducted the unemployment compensation because the director of the Division of Employment Security could not recover the amounts paid to the complainants. *Id*. at 381. Although receipt of back pay awards disqualifies an individual from being in total unemployment and therefore entitled to compensation, see *Meyers* v. *Director of the Div. of Employment Sec.*, 341 Mass. 79, 81-82 (1960), the director may not reconsider a determination based on an error in calculation, or on newly discovered wages, unless the redetermination is made within one year of the initial determination. G. L. c. 151A, § 71. In *School Comm. of Newton,* the award of back wages was made more than one year from the time the unemployment compensation originally was determined, thus, the commissioner allowed the offset to avoid overcompensating the complainants. *Id.*

It is clear from New York-Mass's brief that Mislak received unemployment compensation no later than 1983. The commissioner's decision was issued on March 20, 1985. Therefore, more than a year had passed since the Division of Employment Security had made its initial benefit determination. Allowing Mislak to keep his full back pay as well as the unemployment compensation he had already received would make him more than whole. In these circumstances, we think that the commission should have deducted the amount of the unemployment compensation paid to Mislak during 1982 and 1983 in calculating Mislak's damage award. Accordingly, we remand this case

not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, . . . as, in the judgment of the commission, will effectuate the purposes of this [statute]." The public employees' labor relations law, G. L. c. 150E, § 11, empowers the labor relations commission to "take such affirmative action as will comply with the provisions of this section. . . . It shall order the reinstatement with or without back pay of an employee discharged or discriminated against in violation of the first paragraph of this section." In both contexts, we have held that the formulation of damage awards is within the respective commission's discretion. Compare *School Comm. of Newton, supra* at 381-382, with *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 315-316 (1976) (it is within the broad discretion and authority of the Massachusetts Commission Against Discrimination to fashion appropriate remedies for violations of G. L. c. 151B).

401 Mass. 566                                      583

New York & Massachusetts Motor Service, Inc. *v.* Massachusetts Commission Against Discrimination.

to the Superior Court for remand to the commission for recalculation of the back pay award.

b. *Interest.* New York-Mass contests the commissioner's award of interest on Mislak's back pay award at the statutory rate of twelve percent per annum calculated on the entire amount of the damages from the date the action commenced through the date of payment. New York-Mass contends that the interest award results in a windfall to Mislak because much of the back pay had not accrued by the date the complaint was filed. New York-Mass further argues that it should not be charged interest either for (a) the time between the hearing on Mislak's appeal from the finding of lack of probable cause to the probable cause determination; or (b) from August 1, 1984, to March 20, 1985, the time it took the single commissioner to issue her decision.

In *College-Town, Division of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156 (1987), this court addressed the question raised by New York-Mass's first contention. We concluded that the commission did not err in awarding interest in conformity with G. L. c. 231, § 6B,[15] on a back pay award from the commencement of the proceedings. *Id.* at 170. The commission is granted broad authority under G. L. c. 151B, § 5, to remedy the wrongs of discrimination, and this authority extends to awarding interest to make discrimination victims whole for their injuries. *Id.* See *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 315-317 (1976); *School Comm. of Newton, supra* at 579-580. Accordingly, we find no error in the commission's calculation of interest as provided in G. L. c. 231, § 6B. However, because the amount of the damage award must be reduced by the amount of the unemployment compensation

---

[15] General Laws c. 231, § 6B, provides: "In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damages to property, there shall be added by the clerk to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

Mislak received in 1982 and 1983, the commission also must recalculate the interest accordingly. Therefore, we remand this case to the Superior Court for remand to the commission for addition of interest on the recalculated damages award.

Finally, we address New York-Mass's contention that the commission should not have calculated interest for the time the commission required to determine probable cause and for time required for the commissioner to issue her findings and order. We find this contention to be without merit. New York-Mass does not contend that Mislak in any way occasioned the delays of which it complains, and absent a showing that the prevailing party caused an inexcusable delay in the proceedings we will not require a deduction of interest like the one New York-Mass seeks. Accordingly, we affirm the commission's calculation of interest on Mislak's back pay award at twelve percent per annum from the date of the commencement of the action to the date of payment.

5. *Conclusion.* In sum, we affirm the commission's disposition of Mislak's claim as based on sufficient evidence. Likewise, the commission's finding that New York-Mass would not have suffered undue hardship in accommodating Mislak's religious needs is to stand. We also conclude that the procedures outlined in G. L. c. 151B, §§ 5 and 9, for adjudication of discrimination claims does not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Finally, we remand the case to the Superior Court for remand to the commission for recalculation of the damages award and the interest thereon in conformity with this opinion.

*So ordered.*

LYNCH, J. (dissenting in part). I do not agree that the commission correctly added interest from the commencement of the proceeding to the award of damages for loss of pay. In upholding the commission's award the court relies on *College-Town, Division of Interco, Inc.* v. *Massachusetts Comm'n*

*Against Discrimination*, 400 Mass. 156 (1987), in which I dissented, although I did not reach the interest issue. To the extent that *College-Town* supports the award of interest, I depart from that portion of the opinion as well. Since interest is compensation for the use of money wrongfully withheld, logic compels the conclusion that a claimant is not entitled to interest on a sum until payment of that sum is overdue. It follows, therefore, that an award of damages for lost wages should not properly include interest until such time as the wages would have been earned but for the wrongful conduct of the defendant. No matter how broad the remedial power of the commission, it cannot convert interest into something it is not or refashion the concept to its own liking. The commission has adequate powers to remedy wrongful discrimination without corrupting the meaning of such a universally understood term.