Alfred W. BARTER, Plaintiff,

v.

COLUMBIA FARMS DISTRIBUTION, INC., Defendant.

Civil Action No. 93–40175–NMG.

United States District Court,
D. Massachusetts.

Jan. 30, 1996.

Seymour Weinstein, Richard T. Tucker, Worcester, MA, for plaintiff.

Richard C. Van Nostrand, Worcester, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a motion by defendant, Columbia Farms Distribution, Inc. ("Columbia Farms") for judgment as a matter of law or, alternatively, for a new trial. Defendant bases its motion on five grounds, namely that 1) there was insufficient evidence to support the jury's verdict, 2) the jury verdict was against the great weight of the evidence, 3) the jury charge was inadequate, 4) the jury engaged in improper speculation, and 5) the damages were excessive in light of uncontroverted evidence of mitigation. This Court is unpersuaded by defendant's first four arguments, and addresses only the issue of excessive damages. Upon consideration of the briefs filed by the parties and oral arguments at a hearing held in connection with the motion, the Court concludes that remittitur is warranted in the instant case.

### I. *Background*

On September 30, 1991, plaintiff, Alfred W. Barter ("Barter") sold to Columbia Farms the assets of Native Foods, Inc. and, in consideration of the same, entered into an Employment Agreement and a covenant not to compete. The Employment Agreement provided that, from September 30, 1991, Columbia Farms would employ Barter for a period of five (5) years at an annual salary of $88,-000 per year, plus insurance coverage and other fringe benefits. On July 7, 1993, Columbia Farms terminated plaintiff and failed to pay him the remainder of the salary provided for in the Agreement. Plaintiff commenced the instant lawsuit, alleging breach of contract by Columbia Farms.

At trial, on direct examination, Barter testified that, following the date of breach (i.e., July 7, 1993), he received unemployment compensation benefits of $365 per week for the period through January 1, 1994. In January, 1994, Barter began working for Allmerica. During 1994, he received $37,000 from

that employment, and paid out business expenses which reduced his net receipts to $26,000. Plaintiff further testified that, beginning in 1995 and continuing to the present time, he earned between $800 and $900 per week in gross income at Allmerica, and that his net weekly income after payment of business expenses was $600.

On September 14, 1995, after hearing the evidence presented by the parties, a jury returned a verdict in favor of plaintiff for $286,000, plus an unspecified amount for the fringe benefits provided to Barter under the Employment Agreement. This Court determined that the verdict was not in proper form and, after consulting with counsel for both parties, directed the jury to resume its deliberations.[1] The jury subsequently returned a verdict in favor of Barter for $319,-000. It is evident, therefore, that the jury valued the lost fringe benefits at $33,000 (i.e., $319,000 less the original award of $286,000).

### II. *Analysis*

In reviewing an award of damages, this Court is obliged to review the evidence in the light most favorable to the prevailing party. *Eastern Mount. Platform Tennis, Inc. v. Sherwin–Williams Comp., Inc.*, 40 F.3d 492, 502 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 256 (1995). Remittitur or a new trial on the issue of damages is to be granted only when the award exceeds "any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Id.* (quoting *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir.1982). This Court believes that facts in the case at bar meet that rigorous standard.

As a general principle, an aggrieved party in a breach of contract action is to receive damages which place him in the position in which he would have been had there been no breach. *See, e.g., Conway v. Electro Switch Corp.*, 402 Mass. 385, 388–89, 523 N.E.2d 255 (1988); *Manganaro Bros.,*

---

1. After receiving the incomplete verdict, the Court instructed the jury, without objection by either party, with respect to the manner in which it could value the loss of fringe benefits (such as the use of an automobile and the provision of automobile, medical and life insurance). Specifically, the jury was instructed that it could utilize its common sense and rely upon its life experiences in valuing such benefits.

*Inc. v. Gevyn Construction Corp.,* 610 F.2d 23, 24 (1st Cir.1979) ("[u]nder ordinary damage principles, a party cannot, by claiming a breach, recover more than he would have obtained had no breach occurred"). The damages recoverable by a wronged party are based upon the money he would have received had his employment continued to the end of the contract, less amounts earned in mitigation. *Maddaloni v. Western Mass. Bus Lines, Inc.,* 12 Mass.App.Ct. 236, 249, 422 N.E.2d 1379 (1981); *Conway,* 402 Mass. at 389, 523 N.E.2d 255. In addition, money paid to the plaintiff in lieu of wages, such as unemployment benefits, are also deducted. *New York and Mass. Motor Service, Inc. v. Massachusetts Comm'n Against Discrimination,* 401 Mass. 566, 581–83, 517 N.E.2d 1270 (1988). It is well-established that the defendant bears the burden of proof on the issue of mitigation of damages. *E.g., McKenna v. Commissioner of Mental Health,* 347 Mass. 674, 677, 199 N.E.2d 686 (1964).

The gravamen of defendant's argument is that the jury ignored this Court's instructions and the uncontroverted evidence that was adduced at trial regarding amounts received by Barter following the breach of contract by Columbia Farms. At trial, the Court instructed the jury on the law of mitigation as follows:

> In calculating Barter's damages, you must consider what [he] would have earned if he had stayed at Columbia for the term of the contract and then deduct from those claimed lost wages any amount earned by the plaintiff after his termination, either in the form of unemployment benefits or wages from new employment. . . .

In light of the fact that the evidence regarding amounts received by Barter post-breach was uncontroverted, defendant's argument that the jury ignored that evidence altogether and/or failed to apply this Court's instruction on the law of mitigation is persuasive.

■ Under the contract which the jury found was breached by Columbia Farms, Barter would have been paid $286,000 (i.e., $88,000 per year for approximately three years and three months) for the unexpired term of the contract. That happens to be the amount originally awarded by the jury before the supplemental instructions. In mitigation of such damages there was uncontroverted evidence that:

1. plaintiff received unemployment compensation benefits of $365 per week from July 7, 1993, the date of breach, through January 1, 1994, for a total of $9,125;

2. in 1994, while employed by Allmerica, Barter earned $37,000 and paid business-related expenses which reduced that to a net amount of $26,000; and

3. beginning in 1995 and continuing to the present time, Barter has earned between $800 and $900 per week in gross income, which, after payment of business-related expenses, results in a net weekly income of $600.

Any contract damages awarded to Barter should have been reduced by such amounts received by him in mitigation of his damages.

■ In graph form, the evidence adduced at trial may be summarized as follows:

| Employment Period | Amount due under Employment Contract | Mitigation Amount | Damages |
|---|---|---|---|
| 7/7/93–12/31/93 | $ 42,308 | $ 9,125 | $ 33,183 |
| 1/1/94–12/31/94 | $ 88,000 | $ 26,000 | $ 62,000 |
| 1/1/95–9/14/95 | $ 62,615 | $ 22,200 | $ 40,415 |
| 9/14/95–9/30/96 | $ 93,077 | $ 33,000 | $ 60,077 |
| TOTALS | $286,000 | $90,325 | $195,675 |

This Court concludes that the jury's award of $319,000 (i.e., $286,000 plus the $33,000 it found as the value of the fringe benefits owed under the contract) was excessive. Indeed, in light of the evidence discussed *supra,* the Court finds that the plaintiff's maximum loss was $195,675, plus the $33,000 for the fringe benefits.

If a district court finds that a verdict is excessive, it may order a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. *See Tingley Systems, Inc. v. Norse Systems, Inc.,* 49 F.3d 93, 96 (2d Cir.1995). Accordingly, this Court will ALLOW defendant's motion for a new trial on the issue of damages unless plaintiff files and serves a remittitur, consenting to a reduction of the award to $228,675. If plaintiff fails to file such a remittitur, a new trial on the issue of damages will be held.

### ORDER

For the foregoing reasons, it is ordered that:

1) defendant's motion for judgment as a matter of law or, alternatively, for a new trial is DENIED, except that

2) the motion for a new trial on the issue of damages will be ALLOWED unless, within ten (10) days after entry of this memorandum and order, plaintiff, through his counsel, files and serves a remittitur, consenting that the damages award be reduced to $228,675.