JOHN A. MACOVIAK vs. CHASE HOME MORTGAGE
CORPORATION & others.[1]

No. 95-P-1438.

Middlesex. May 7, 1996. - July 22, 1996.

Present: SMITH, PORADA, & IRELAND, JJ.

*Real Property,* Sale, Appraisal report. *Statute,* Construction. *Negligence,*
Appraisal of real estate. *Fraud. Consumer Protection Act,* Mortgage of
real estate. *Practice, Civil,* Summary judgment.

The clear and unambiguous language of G. L. c. 184, § 17C, operated to
bar an action alleging negligence in preparation of a real estate appraisal
brought by a seller against a mortgage broker acting as an agent for a
mortgage lender, the mortgage lender, and a real estate appraiser, where
the claims were based upon the contents of the report. [759-760]
In a civil action the judge correctly ordered summary judgment in favor of
the defendants on the plaintiff's claims for fraud and violation of G. L.
c. 93A, where the plaintiff did not produce evidence of the defendant's
wilfulness in order to fulfill the intent element of fraud and where the
c. 93A claim was based solely on the underlying claim for fraud.
[760-761]

CIVIL ACTION commenced in the Superior Court Department on May 6, 1993.

The case was heard by *James F. McHugh, III,* J., on motions for summary judgment.

*Albert A. DeNapoli* for the plaintiff.

*Robert T. Wyman* for Fidelity Appraisal Group, Inc.

*Richard C. Bremer, Jr.,* for Mortgage Max, Inc., submitted a brief.

*Michael H. Arwe,* for Chase Home Mortgage Corporation, submitted a brief.

SMITH, J. The plaintiff, John A. Macoviak, appeals from the granting of summary judgment by a Superior Court judge

---

[1]Mortgage Max, Inc., and Fidelity Appraisal Group, Inc.

in favor of the defendants, Chase Home Mortgage Corpora-
tion (Chase), Mortgage Max, Inc. (Mortgage Max), and Fi-
delity Appraisal Group, Inc. (Fidelity). For purposes of our
review, we consider the evidence in the light most favorable
to the plaintiff. *Conley* v. *Massachusetts Bay Transp. Authy.*,
405 Mass. 168, 173 (1989). We summarize the relevant facts.

On March 16, 1990, the plaintiff signed a purchase and sale
agreement to purchase property in Ipswich. The property
consisted of 4.6 acres of land improved by a large house, a
cottage, and a barn with stables. The agreed purchase price
was $765,000. The agreement provided a standard financing
contingency clause which conditioned the plaintiff's purchase
of the property upon his ability to obtain financing in an
amount of $535,000 or seventy per cent of the purchase price.

The plaintiff submitted a loan application to Mortgage
Max, a mortgage broker. In his application, he applied for
$573,700, which equalled seventy-five per cent of the purchase
price for the property, the full amount of financing available.
Mortgage Max informed the plaintiff, among other things,
that it would approach Chase, a mortgage lender, to provide
the mortgage loan to the plaintiff.[2] Mortgage Max also told
the plaintiff that for loans the size that he sought, Chase
would require an appraisal of the property in order to ensure
that the amount of the note to be secured by the mortgage on
the property did not exceed seventy-five per cent of the value
of the property. The plaintiff paid for the appraisal.

Mortgage Max, acting as Chase's agent, hired Fidelity to
perform the appraisal on the property. Fidelity knew the
identity of the purchaser, that the contract price for the sale
was $765,000, and that the appraisal was being sought in con-
nection with the plaintiff's application for a mortgage in the
amount of $573,700.

The initial appraisal report was based on an inspection of
the property and three comparable sales in Ipswich, Hamil-
ton and Wenham. Fidelity reported the market value of the
property, as of March 26, 1990, to be $765,000, the exact
purchase price. The report expressly stated that the real estate
market in the area appeared to be "stable." Chase rejected
the report and informed the plaintiff that no financing would

---

[2]There was evidence before the judge that Mortgage Max was an agent
of Chase.

be extended unless Chase obtained from Fidelity two additional comparable sales supporting its opinion of the value of the property from the same town and also a more detailed explanation of why it used a comparable sale of property located some distance from the subject property. Fidelity responded to Chase that Ipswich was a marketplace of limited sales and that it was appropriate to utilize comparables from Hamilton and Wenham, because they were abutting communities of Ipswich and were of similar market desire and appeal. Fidelity also explained that it used the challenged comparable sale even though it was some distance from the challenged property because "in a marketplace of limited comparable sales, it became necessary to utilize this sale." Chase did not request any further information and approved the loan in the amount of $573,700. Chase based its approval upon the plaintiff's credit-worthiness and the appraisal report setting forth the value of the property. On May 7, 1990, the plaintiff purchased the property for $765,000. He financed $573,700 of that amount by giving a note to Chase secured by a first mortgage on the property.

About ten months after his purchase, the plaintiff accepted a new position in California and placed the property on the market at $765,000, the price he had paid. He did not receive any offers and gradually lowered his asking price but still was not able to solicit interested buyers even within the $575,000 price range. Later, the plaintiff obtained a "retroactive" appraisal report from an appraiser, not Fidelity, which stated that the value of the property as of the date the plaintiff purchased it was $625,000.

In his complaint against all of the defendants, the plaintiff alleged negligence (including gross negligence) in the preparation and use of Fidelity's report, fraud, and violations of G. L. c. 93A based on the defendants' alleged negligence and fraud.[3]

After considerable discovery by the parties, the defendants filed motions for summary judgment. They argued that, at least in regard to the negligence claims, G. L. c. 184, § 17C,

---

[3]In his complaint, the plaintiff also alleged violations of an implied covenant of good faith and fair dealing. He agreed at the hearing on the defendants' motions for summary judgment to a voluntary dismissal of that claim.

barred the plaintiff's action.[4] In regard to the plaintiff's claims of fraud and violation of c. 93A, the defendants contended that the plaintiff had no reasonable expectation of proving the essential elements of fraud, or a violation of c. 93A. The plaintiff responded with affidavits, including one from an individual identified as an expert witness, who opined that the use of two of the comparable sales made the appraisal unreliable on its face.

After hearing arguments, a Superior Court judge granted summary judgment in favor of the defendants. In regard to the plaintiff's claims of negligence, the judge acknowledged that the plaintiff had alleged deficiencies in the way that Fidelity had prepared its report and that Chase and Mortgage Max acted negligently in view of the alleged deficiencies on the face of the report. However, the judge concluded that those claims were directed at the *contents* of the appraisal report. Therefore, the judge ruled that because the basis for at least the negligence claims was the contents of the appraisal report submitted by Fidelity, G. L. c. 184, § 17C, barred those claims. The judge also ruled that in regard to the claims of fraud and the alleged violation of G. L. c. 93A, the plaintiff failed to demonstrate a genuine issue of material fact.

On appeal, the plaintiff argues that the judge misinterpreted G. L. c. 184, § 17C, because the statute was not intended to insulate appraisers and lenders from responsibility for the preparation and the use of facially deficient appraisals. In addition, he claims that a genuine issue of material fact existed

---

[4] General Laws, c. 184, § 17C (1988 ed.), states in relevant part:

"Any mortgagee doing business in the commonwealth, when processing an application for a loan to be secured by a first mortgage on residential property, shall, upon the issuance to the applicant of a letter of commitment to . . . such application, include therein notification of the availability to the applicant of a copy of any report, wherever and by whomever prepared, utilized by the mortgagee in connection with any such application and containing an opinion as to the value of said residential property. Upon written request of the said applicant, a copy of any such report shall be provided without additional charge or fee within thirty days from the date of such request; provided, however, that a mortgagee shall not be required to make such copy available if the applicant rescinds the transaction. *A mortgagee, appraiser or employee or other agent of the mortgagee shall not be liable in damages to the applicant, or to the seller or agent of the seller of such property on account of the disclosure or the contents of any such report*" (emphasis added).

as to the allegation of fraud and the alleged violation of G. L. c. 93A.

1. *Negligence claims and G. L. c. 184, § 17C.* The language of G. L. c. 184, § 17C (1988 ed.), is clear and unambiguous and, therefore, must be given its plain meaning. *Telesetsky* v. *Wright*, 395 Mass. 868, 872 (1985). *Weitzel* v. *Travelers Ins. Cos.*, 417 Mass. 149, 153 (1994).

According to the statute, if a lender, in connection with a loan application, utilizes an appraisal report that contains an opinion as to the value of the residential property on which the mortgage is sought, it must make that report available, on written request, to the borrower. Thus, the statute imposes a disclosure obligation upon lenders as to appraisers' reports once a borrower's application for real estate financing has been accepted or denied.

However, the statute commands, without equivocating, that:

> "A mortgagee, appraiser, or employee or other agent of the mortgagee shall not be liable in damages to the applicant [borrower] . . . on account of the disclosure or the contents of any such [appraisal] report."

Thus, the statute explicitly restricts a borrower's rights with respect to the disclosure or the contents of an appraisal report.

The reason for the inclusion of such restrictive language can be traced to the purpose of the appraisal report. The lender obtains an appraisal report in order to determine "[w]hether the value of the property is sufficient to secure the loan." 209 Code Mass. Regs. § 38.99 Appendix B (1988). Thus, the purpose of the report is to inform the lender that the property has a sufficient fair market value to secure the requested loan. The risk of negotiating a fair price for the property remains with the buyer-borrower. The report is not intended to certify resale value to the borrower. The plaintiff argues that his negligence claims are not based upon the contents of the report but instead are based upon Fidelity's conduct in preparing the appraisal. We agree with the motion judge that it was the contents of the appraisal report — its opinion as to the value of the property and its statements as to the basis for that opinion — which constitute the basis for

the plaintiff's claim. Therefore, G. L. c. 184, § 17C, bars the plaintiff's negligence claim.

2. *Fraud and c. 93A violations claims.* The plaintiff argues that the judge committed error when he ruled that the fraud and c. 93A violation were barred by G. L. c. 184, § 17C. Contrary to the plaintiff's argument, the judge did not so rule. Rather, the judge treated those claims separately and held that the plaintiff failed to meet his burden of demonstrating a genuine issue of material fact as to alleged fraudulent conduct. After examining the record in this matter, we agree with the judge.

"[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

In order to show fraud, the plaintiff would have to show that Fidelity "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [the plaintiff] to act thereon, and that [the plaintiff] relied upon the representation as true and acted upon it to his damage." *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 8 (1982), quoting from *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963).

The plaintiff did not produce any evidence that Fidelity either knowingly misstated value, or prepared the report with "such a wilful disregard of the facts as to amount to fraud." *Christian* v. *Mooney*, 400 Mass. 753, 764 (1987). The affidavit from the plaintiff's expert witness only states that witness's opinion that Fidelity was negligent in preparing the appraisal report, not that it was wilful. Proof of negligence does not establish wilfulness to fulfill the "intent" element of fraud. See *Christian* v. *Mooney, supra* at 764-765.

The plaintiff's claim of a violation of c. 93A also is without merit. Although a claim under c. 93A "goes far beyond the scope of the common law action for fraud . . .," *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975), the plaintiff's c. 93A claim is solely based upon his underlying claim for common law fraud. As matter of law, the plaintiff has no reasonable expectation of proving a violation of c. 93A.

Because the plaintiff cannot prove fraud or a violation of c. 93A by Fidelity, his claims against Chase and Mortgage Max necessarily fail.

*Judgment affirmed.*