**MILLEN INDUSTRIES, INC., Plaintiff,**

v.

**FLEXO–ACCESSORIES CO., INC.,**
d/b/a Propheteer International,
Defendant.

No. CIV.A. 96–10174–GAO.

United States District Court,
D. Massachusetts.

July 10, 1998.

Martin I. Eisenstein, Roy T. Pierce, Brann & Isaacson, Lewiston, ME, for Millen Industries, Inc.

Alexandra H. Glover, Sugarman, Rogers, Barshak & Cohen, Boston, MA, Robert M. Kaplan, Palatine, IL, David T. Rallo, Rallo & Tepper, Chicago, IL, David Barry, for Flexo–Accessories Co., Inc.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

In February of 1993, the plaintiff, Millen Industries, Inc. ("Millen"), entered into a contract to purchase a specialized printing press from defendant Flexo–Accessories Co., Inc. ("Flexo") at a cost of $430,365.00. The plaintiff has sued for damages, claiming that the press does not function as promised. The defendant has counterclaimed for breach of contract and for declaratory relief. The matter is currently before the Court on two motions by the defendant—a motion to dismiss Counts VI and VII of the plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6); and a motion for summary judgment as to the scope of plaintiff's damages. For the reasons set forth below, the Court DENIES both motions.

### FACTUAL BACKGROUND

The plaintiff, a manufacturer of folding cartons and shoe boxes, contacted the defendant, a manufacturer of printing presses, in November 1992, seeking to purchase a new press which would print at a speed of 500 feet per minute and enable the plaintiff to complete in-house a job for a particular client which Millen had previously been forced to outsource. During negotiations between the parties, the plaintiff provided Flexo with details about the type of press it required. After the defendant's representatives assured Millen that Flexo could produce a press to accommodate Millen's needs, the parties executed a contract for the purchase of a printing press by Millen at a price of $430,365.00.

The contract provided for a two-phase acceptance test. Phase One would occur at Flexo's facility in Illinois. If the press failed to satisfy this test, Millen could opt either to extend the acceptance date or declare Flexo in default, terminate the contract, and receive a full refund of any payments made within thirty days. If the press passed Phase One of the acceptance test, the press would be shipped to Millen's Massachusetts plant and the test would be repeated there.

In November 1993, the Flexo press failed to satisfy Phase One, and Millen immediately informed the defendant that the machine was unacceptable. However, Flexo's president assured the plaintiff that the shortcomings could be remedied and, in reliance on this assurance, the plaintiff agreed to have the press installed in its plant and paid a balance of $301,255.00 owed to the defendant at that time.

The press was installed at Millen's Lawrence facility in December 1993. Since it arrived the press has been unable to print to Millen's satisfaction. Various technical personnel from Flexo have repeatedly attempted to address and rectify the problems identified by the plaintiff, with no success. To date, the machine has not satisfied the acceptance test provided for in the contract.

Count VI of the Amended Complaint asserts a claim against Flexo for misrepresentation and fraud. It alleges that Flexo's various statements regarding its ability to manufacture a press that would be able to meet Millen's requirements were material misrepresentations that were either knowingly or negligently false at the time they were made. Count VII of the Amended Complaint makes out a claim for unfair trade practices under Mass. Gen. L. ch. 93A, §§ 2 and 11 for the fraudulent and/or negligent misrepresentations allegedly made by Flexo.

### LEGAL ANALYSIS

*1. Count VI:*

In order to prove fraud or misrepresentation, a plaintiff must show that the defendant, "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [the plaintiff] to act thereon, and that [the plaintiff] relied upon the representation as true and acted upon it to his damage." *Macoviak v. Chase Home Mortgage Corp.,* 40 Mass.App.Ct. 755, 667 N.E.2d 900, 904 (1996) (citations omitted). However, "false statements of opinion, of conditions to exist in the future, or of matters

promissory in nature are not actionable." *Pepsi–Cola Metro. Bottling Co. v. Pleasure Island, Inc.*, 345 F.2d 617, 622 (1st Cir.1965) (citation omitted). A statement which amounts to "nothing more than a kind of self-directed corporate puffery" is not actionable. *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1218 (1st Cir.1996). Liability for fraud or misrepresentation cannot be established where the "alleged misrepresentation concerned a matter of opinion, estimate, or judgment, which was not susceptible of actual knowledge at the time of its utterance." *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1199 (D.Mass.1990).

■ At this stage in the proceedings, it cannot be said, as a matter of law, that the defendant's statements to Millen regarding the press it would build represent nothing more than nonactionable statements of opinion or conditions to exist in the future. The statements allegedly made by Flexo were specific, referring to a specific client of Millen's, a specific job, and specific benchmarks. Moreover, future-directed statements may be actionable as misrepresentations when "the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate." *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 575 N.E.2d 70, 75 (1991) (citations omitted).

■ The defendant contends that its statements were not statements of fact which were susceptible of actual knowledge, a requirement in an action for fraud. *See Yerid v. Mason*, 341 Mass. 527, 170 N.E.2d 718 (1960); *Pietrazak v. McDermott*, 341 Mass. 107, 167 N.E.2d 166 (1960). However, Flexo supposedly made statements that the press would work properly *after* the first acceptance test, when the press was substantially complete. These could be understood as statements about the existing configuration of the machine. The plaintiff has adequately stated a claim, and the motion to dismiss Count VI must be denied.

### 2. Count VII:

Count VII alleges a violation of Mass. Gen. L. ch. 93A, §§ 2 and 11, relying on the fraud and misrepresentations asserted in Count VI. Since the fraud and misrepresentation claims survive the motion to dismiss, so does Count VII.

### 3. Motion for Partial Summary Judgment to Limit the Scope of Damages:

The defendant has also presented a motion for partial summary judgment as to the scope of plaintiff's damages. According to the defendant, the plaintiff's failure either to declare Flexo in default after the first acceptance test or formally to extend the acceptance test means that a condition precedent to Flexo's further obligations under the contract has not been met. Therefore, Flexo contends, until either has occurred—that is, until either an extension of the deadline for the successful completion of an acceptance test or a declaration of default—no performance by Flexo is due under the contract, and no damages may be assessed.

■ The plaintiff argues simply that it has waived the condition precedent. A condition precedent in favor of one of the parties may be waived by that party. *See American Title Ins. Co. v. East West Fin.*, 16 F.3d 449, 459 (1st Cir.1994). Whether a condition precedent has been waived is a question of fact. *Lancaster v. General Accident Ins. Co. of America*, 32 Mass.App.Ct. 925, 587 N.E.2d 246, 247 (1992) (reversing entry of summary judgment). Without more, this is a clear dispute of a material fact which makes entry of summary judgment on these grounds inappropriate.

■ At bottom, the defendant's rationale for limiting the scope of damages amounts to a mitigation of damages argument. Since mitigation of damages is an affirmative defense, Flexo has the burden of proof on the issue. *Barter v. Columbia Farms Distrib., Inc.*, 912 F.Supp. 16, 18 (D.Mass.1996). Flexo's suggestion that Millen, despite knowing the limitations of the press, made the 'ill-conceived' business decision to continue to accept work it had to outsource mischaracterizes the matter. Flexo has presented no facts which would suggest that Millen took on new jobs that it would have had to outsource had the press worked as promised.

To the contrary, Millen had already been outsourcing printing work and it ordered the new press from Flexo for the express purpose of eliminating the need to outsource in the future. In any event, whether a plaintiff has taken reasonable steps to mitigate its damages is a question of fact which should not be resolved at the summary judgment stage of proceedings. *Allied Int'l. v. International Longshoremen's Ass'n, AFL–CIO,* 814 F.2d 32, 38–39 (1st Cir.1987). Therefore, the motion for partial summary judgment as to the scope of plaintiff's damages must be denied.

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Counts VI and VII is DENIED, and the defendant's motion for partial summary judgment as to the scope of plaintiff's damages is also DENIED.

IT IS SO ORDERED.